945 F.2d 1514
 60 USLW 2301
 Scott FANE, Plaintiff-Appellee,
v.
Fred H. EDENFIELD, Jr., Richard J. Aboud, Whipple Van Ness
Jones, Jr., Margaret F. Struope, Dean F. Denison, William R.
Martin, Joseph R. Millsaps, Antonio L. Argiz, Jerome A.
Schine, in their official capacities as members, Board of
Accountancy, Defendants-Appellants.
 No. 90-3943.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 30, 1991.
 
 John J. Rimes, III, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for defendants-appellants.
 Kenneth R. Hart, Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, Fla., for amicus curiae, Fla. Inst.
 David Charney Vladeck, Public Citizen Litigation Group, Washington, D.C., Albert J. Hadeed, Southern Legal Counsel, Inc., Gainesville, Fla., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of Florida.
 Before EDMONDSON and DUBINA, Circuit Judges, and ESCHBACH*, Senior Circuit Judge.
 DUBINA, Circuit Judge:
 
 
 1
 The appellants, all of whom are members of the Florida Board of Accountancy ("the Board"), appeal the district court's grant of summary judgment in favor of the appellee, Scott Fane ("Fane"). For the reasons which follow, we affirm the district court's grant of summary judgment.I. FACTUAL BACKGROUND
 
 
 2
 Fane is a certified public accountant ("CPA") who is certified in New Jersey and Florida. In the mid-1980's, he moved to Florida to set up an accounting practice, and sought to solicit business via in-person contacts with businesses he felt would be interested in his services. Fane was not able to implement his planned solicitation, however, because in-person solicitation by CPAs is forbidden in Florida.[1] The ban only applies to CPAs. Other financial professionals, such as non-certified accountants, bookkeepers, and tax preparers, are not prohibited from utilizing personal contacts to solicit new clients.
 
 
 3
 Only three other states, i.e., Georgia,[2] Texas,[3] and Louisiana,[4] prohibit in-person solicitation by CPAs. In addition, the accounting boards of twelve other states prohibit in-person solicitation, although the validity of such a prohibition by competing accountants without legislative authorization has been questioned under the antitrust laws. R1-18-1, Exh. D (letter from Anthony Low Joseph, Bureau of Competition, Federal Trade Commission, to Eleanor Weinstock, Florida State Senator (Apr. 28, 1987), comparing Florida's statutory regulation of CPAs' solicitation to its regulation of other professions and the regulation of accountants in other states). See also Rhode Island Board of Accountancy, 107 F.T.C. 293 (1986).
 
 
 4
 Fane instituted this lawsuit in an effort to have Florida's prohibition of in-person solicitation by CPAs declared unconstitutional. The Board disputed any constitutional violation created by the proscription. The district court granted Fane's motion for summary judgment and enjoined the Board from enforcing the ban on in-person solicitation by CPAs in Florida. The Board then perfected its appeal to this court.
 
 II. DISCUSSION
 
 5
 The only issue raised by the Board that we need to address is whether the district court correctly determined that Florida's prohibition on in-person solicitation by CPAs is unconstitutional.[5] We review the district court's order granting summary judgment de novo. Akins v. Snow, 922 F.2d 1558, 1560 (11th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 2915, 115 L.Ed.2d 1079 (1991). Conclusions of law rendered upon summary judgment are subject to the same standard of appellate review as any question of law brought on appeal. Morrison v. Washington County, Alabama, 700 F.2d 678, 682 (11th Cir.), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983), holding mod. on other grounds, Helicopter Support Systems, Inc. v. Hughes Helicopter, Inc., 818 F.2d 1530 (11th Cir.1987) (citations omitted).
 
 
 6
 Fane contends that Florida's prohibition against in-person solicitation by CPAs is an unconstitutional restriction of commercial speech because the restraint does not further the state's interest in regulating the accounting profession, nor is it narrowly tailored to that end. Fane also maintains that the imposition of the ban upon CPAs, but not on other accounting professionals who perform the same tasks, is a violation of equal protection. The Board argues that the ban is necessary to protect a CPA's integrity, independence, and objectivity while performing the attest function.[6] The Board also argues that the ban is a permissible time, place, and manner restriction that is content neutral.
 
 
 7
 Commercial speech, i.e., expression that is related exclusively to the economic interests of the speaker and audience, is undeniably entitled to substantial protection under the First and Fourteenth Amendments of the United States Constitution.[7] Peel v. Attorney Registration and Disciplinary Comm'n, --- U.S. ----, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990); Board of Trustees of State University of New York v. Fox, 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989); Shapero v. Kentucky Bar Ass'n, 486 U.S. 466, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988); Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985); Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980); Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). The informational function of advertising forms the basis for the First Amendment's concern for commercial speech. First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 783, 98 S.Ct. 1407, 1419, 55 L.Ed.2d 707 (1978). Commercial speech furthers the economic interests of the speaker while also assisting the consumer audience. Central Hudson, 447 U.S. at 561-62, 100 S.Ct. at 2348-49. The importance of the dissemination of commercial information is its benefit to consumers and society. Virginia State Board of Pharmacy, 425 U.S. at 764-65, 96 S.Ct. at 1827.
 
 
 8
 Blanket prohibitions on commercial speech are disfavored. Shapero, 486 U.S. at 476, 108 S.Ct. at 1923. The mere possibility that isolated abuses or mistakes may occur does not justify a total ban on a certain mode of protected commercial speech. Id. Any restriction of commercial speech requires "the government goal to be substantial, and the cost to be carefully calculated." Fox, 492 U.S. at 480, 109 S.Ct. at 3035. For example, the government may ban commercial speech that is more likely to deceive the public than to inform it, Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 464-65, 98 S.Ct. 1912, 1922-23, 56 L.Ed.2d 444 (1978), or commercial speech that is related to illegal activity, Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations, 413 U.S. 376, 388, 93 S.Ct. 2553, 2560, 37 L.Ed.2d 669 (1973). In most other contexts, the First Amendment prohibits regulation based on the content of the speech. Consolidated Edison Co. of New York, Inc. v. Public Service Comm'n, 447 U.S. 530, 537-38, 100 S.Ct. 2326, 2333-34, 65 L.Ed.2d 319 (1980).
 
 
 9
 In Central Hudson, the Supreme Court articulated the following four-part test for assessing the constitutionality of a restriction on commercial speech:
 
 
 10
 At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.
 
 
 11
 447 U.S. at 566, 100 S.Ct. at 2351. In applying the Central Hudson analysis to Florida's restriction of Fane's commercial speech, the district court found that Florida's prohibition of in-person solicitation by CPAs failed to advance the governmental interest asserted and was more extensive than was necessary to serve that interest.[8]
 
 
 12
 In reviewing the validity of Florida's restriction on in-person solicitation by CPAs, we must determine whether there exists a " 'fit' between the legislature's ends and the means chosen to accomplish those ends...." Fox, 492 U.S. at 480, 109 S.Ct. at 3035 (quoting Posadas de Puerto Rico Assocs. v. Tourism Co. of Puerto Rico, 478 U.S. 328, 341, 106 S.Ct. 2968, 2977, 92 L.Ed.2d 266 (1986)). The relationship between the legislature's means and ends must be reasonable, but does not require perfection; furthermore, its scope must be "in proportion to the interest served." Fox, 492 U.S. at 480, 109 S.Ct. at 3035 (quoting In re R.M.J., 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982)). Florida is not required to employ the least restrictive means to accomplish its ends, but it must utilize "a means narrowly tailored to achieve the desired objective." Fox, 492 U.S. at 480, 109 S.Ct. at 3035. Florida bears the burden of justifying its restrictions. Zauderer, 471 U.S. at 647, 105 S.Ct. at 2279.
 
 
 13
 The Board attempts to justify Florida's proscription of in-person solicitation by CPAs on the basis of the need to preserve and protect the public's ability to rely on the independence and objectivity of CPAs who are performing the attest function. The Board also contends that because there is no acceptable method of regulating in-person solicitation, a prophylactic rule against its utilization by CPAs is necessary to protect the public. Nowhere in the record, however, do we find that the Board has produced any evidence of any link between in-person solicitation and the likelihood that a CPA will be more likely, or even willing, to engage in dishonest or oppressive conduct during such solicitation. Prophylactic restraints on commercial speech based on unsupported assertions or unsubstantiated fears are not acceptable. Zauderer, 471 U.S. at 647-48, 105 S.Ct. at 2279-80. "[T]he States may not place an absolute prohibition on certain types of potentially misleading information ... if the information also may be presented in a way that is not deceptive." In re R.M.J., 455 U.S. at 203, 102 S.Ct. at 937. The availability to the general public of commercial information such as that Fane seeks to communicate is valuable enough to justify imposing the burden upon Florida of distinguishing "the truthful from the false, the helpful from the misleading, and the harmless from the harmful." Zauderer, 471 U.S. at 646, 105 S.Ct. at 2279. Broad prophylactic rules simply cannot be justified if the protections afforded commercial speech are to remain viable. Id. at 649, 105 S.Ct. at 2280-81.
 
 
 14
 Even if there were evidence before us to indicate that allowing CPAs who perform audit and review engagements to solicit in-person would undermine the integrity of financial statements, that still would not justify the total prohibition of in-person solicitation by all CPAs. CPAs who specialize in many aspects of the accounting profession have no occasion to attest to the accuracy of audits or financial statements. If allowed at all, Florida's statute must be narrowly tailored to achieve its anticipated objective.
 
 
 15
 A statute is narrowly tailored if it targets and eliminates no more than the exact source of the "evil" it seeks to remedy. A complete ban can be narrowly tailored, but only if each activity within the proscription's scope is an appropriately targeted evil.
 
 
 16
 Frisby v. Schultz, 487 U.S. 474, 485, 108 S.Ct. 2495, 2502-03, 101 L.Ed.2d 420 (1988) (citation omitted). Florida's restriction bans far more speech than is necessary in light of the justification offered for its restraint.
 
 
 17
 If a state can combat wrongdoing by direct means, it cannot use its interest in foreclosing harm to justify broad-scale restraints on speech. Shapero, 486 U.S. at 476, 108 S.Ct. at 1923. Regulatory requirements exist in Florida that can be utilized to preserve the independence of CPAs who perform the attest function. The Board does not offer any explanation as to why those requirements do not adequately afford the protection which it seeks. First and foremost, Fla.Stat.Ann. § 473.315(1) (West 1991) prohibits a CPA from expressing "an opinion on the financial statements of an enterprise unless he and his firm are independent with respect to such enterprise." Second, CPAs are forbidden from engaging in any kind of fraudulent or deceptive conduct. See Fla.Stat.Ann. § 473.323(1)(f), (k) (West 1991).[9] Third, negligent certification of financial statements could give rise to tort liability. The Florida Supreme Court recently held that in certain circumstances, a CPA can be held liable to those persons whom he "knows" will rely on his opinion, regardless of whether the CPA is in privity with them. First Florida Bank v. Max Mitchell & Co., 558 So.2d 9, 15 (Fla.1990). The Board has the duty to at least explore less intrusive alternatives than a blanket ban on in-person solicitation imposed on all CPAs. Shapero, 486 U.S. at 477-78, 108 S.Ct. at 1923-24. Furthermore, the utilization of an advertising ban to protect the ethical or performance standards of a profession is impermissible. Central Hudson, 447 U.S. at 564, 100 S.Ct. at 2350. See also Virginia State Board of Pharmacy, 425 U.S. at 769, 96 S.Ct. at 1829.[10]
 
 
 18
 The Board asserts that speech protected by the First Amendment, whether commercial or ideological, may still be subjected to legitimate time, place, and manner restrictions, so long as those regulations are based on criteria that is content neutral. Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45, 103 S.Ct. 948, 954-55, 74 L.Ed.2d 794 (1983). A time, place, and manner restriction seeks merely to regulate when, where, and how the protected activity may take place. City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 46, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986). The regulation challenged by Fane does more, however, for it acts as an unqualified ban on in-person solicitation rather than regulating the details of when, where, and how a CPA may engage in such solicitation. Furthermore, a constitutionally permissible time, place, and manner restriction must not be based upon the content of the speech. Consolidated Edison, 447 U.S. at 536, 100 S.Ct. at 2332-33. Florida's regulation of in-person solicitation by CPAs is not content neutral. It is a speaker-specific, unqualified ban on a category of expressive activity. Only CPAs who wish to speak directly to potential clients are restrained. The appropriate bounds of time, place, and manner restrictions on commercial speech are clearly exceeded by Florida's statute.[11]
 
 
 19
 The Board also argues that its position is supported by Ohralik, 436 U.S. at 447, 98 S.Ct. at 1913 (upholding a ban on in-person solicitation by attorneys) and National Funeral Servs., Inc. v. Rockefeller, 870 F.2d 136 (4th Cir.), cert. denied, 493 U.S. 966, 110 S.Ct. 409, 107 L.Ed.2d 374 (1989) (upholding a ban on in-person solicitation by funeral directors selling preneed burial services). The district court concluded that Ohralik and National Funeral Services do not apply to this case because the nature of the accounting profession and its soliciting targets differs in material respects from the legal and funeral services professions and their soliciting targets, making the imposition of such a ban on CPAs unnecessary.
 
 
 20
 As the majority opinion in Ohralik indicates, and as Justice Marshall's concurrence makes clear, the holding of Ohralik is limited. "[T]he solicitation of business, under circumstances--such as those found in this record--presenting substantial dangers of harm to society or the client independent of the solicitation itself, may constitutionally be prohibited by the State." 436 U.S. at 470, 98 S.Ct. at 1926 (Marshall, J., concurring in part and concurring in the judgment). The majority opinion rests on whether an Ohio attorney disciplinary rule had been constitutionally applied to Ohralik. Id. at 467-68, 98 S.Ct. at 1924-25. Indeed, Ohralik did not challenge the rule on its face, and conceded its constitutionality in some contexts. Id. at 461-62, 466 n. 27, 98 S.Ct. at 1921-22, 1924 n. 27. Ohralik deals with an outrageous situation in the area of attorney solicitation.[12] Many cases will fall between the extremes of Ohralik and cases such as NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) and In re Primus, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978), where solicitation by attorneys is clearly permitted because of its policital expression and association value. Ohralik, 436 U.S. at 471-72, 98 S.Ct. at 1926-27 (Marshall, J.).
 
 
 21
 We are presented here with such an intermediate case in the context of another class of professionals--CPAs.[13] The possibilities for overreaching, invasion of privacy, exercising undue influence, and outright fraud that the Supreme Court found were cause for concern if lawyers were allowed to solicit in-person are remote in the accounting profession. See Ohralik, 436 U.S. at 464-66, 98 S.Ct. at 1922-24. Solicitation by a CPA does not entail the "coercive force of the personal presence of a trained advocate." Zauderer, 471 U.S. at 642, 105 S.Ct. at 2277. Likewise, the solicitation of a business person by an accountant is in no way comparable to the intrusive solicitation of a family member by a salesperson of funeral services at a time of emotional vulnerability. See National Funeral Services, 870 F.2d at 142-45. We agree with the district court that the ban on in-person solicitation endorsed in Ohralik and National Funeral Services is not necessary to protect the general public from solicitation by a CPA.
 
 III. CONCLUSION
 
 22
 We do not lightly interfere with a state's power to regulate the professions which practice within it. Nevertheless, the state's regulatory power cannot be used to insulate restrictions of constitutionally protected speech from our review for constitutional infirmity. See Peel, --- U.S. at ----, 110 S.Ct. at 2291-92. In this case, Florida's restriction of in-person solicitation by CPAs does not directly advance the state's asserted interest. The justification offered for the ban could be served equally well by existing regulations imposed on the accounting profession or by a more limited restriction of the protected speech. We therefore affirm the district court's order granting summary judgment in favor of Fane and enjoining the State of Florida from enforcing its ban on in-person solicitation by CPAs.
 
 
 23
 AFFIRMED.
 
 EDMONDSON, Circuit Judge, dissenting:
 
 24
 States have a strong interest in regulating the practice of professions within their borders. Goldfarb v. Virginia State Bar, 421 U.S. 773, 792, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572 (1975). Because I believe states are largely free to regulate the professionals which they license, I reach a different conclusion in this case. My view is that Florida's regulation, prohibiting face-to-face solicitation of clients by certified public accountants (CPAs), should stand.
 
 
 25
 Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978), is extremely persuasive and supports Florida's prohibition against in-person solicitation by CPAs. In Ohralik, the Supreme Court upheld a state regulation prohibiting in-person solicitation of clients by lawyers. The Court's reasoning focused on the potential harms that face-to-face solicitation poses for prospective clients. Because in-person solicitation inherently opens the door to "fraud, undue influence, intimidation, overreaching, and other forms of 'vexatious conduct.' " Id. at 462, 98 S.Ct. at 1921, the Court recognized the need for a state to enact a rule designed to protect lay people. With advertising generally the recipient may simply turn away, but in-person solicitation may exert pressure and often demand an immediate response from the prospective client, who then has less opportunity for reflection. Id. And because in-person solicitation is not visible or otherwise open to public scrutiny, such solicitation is hard to oversee effectively or to regulate. Id. at 466, 98 S.Ct. at 1924. The Court, consequently, recognized the need for a state to adopt a prophylactic measure, such as a ban on in-person solicitation, to prevent harm from occurring. Id. at 464, 98 S.Ct. at 1923.
 
 
 26
 In upholding the state's prohibition, the Court in Ohralik noted that people contacted in-person might be especially susceptible to a lawyer's pressure since lawyers are "advocate[s] trained in the art of persuasion." Id. at 465, 98 S.Ct. at 1923. But this quoted language was not at the heart of the Ohralik's reasoning. I think Ohralik's reasoning reaches professionals other than lawyers. After all, not all lawyers are trained advocates; now relatively few lawyers are directly involved in litigation or advocacy roles. In-person solicitation is potentially harmful chiefly because lawyers, as professionals, have (and are perceived by lay people to have) specialized knowledge beyond that of their solicited clients. The special leverage, or ability to pressure others, that lawyers have is not so much a function of their oratory skill; instead, it stems from the gap in knowledge between the professional and the lay person. The client, when compared to the professional, is almost always unsophisticated when it comes to the subject of the professional's work. The danger lies with the lawyer who intimidates or baits the potential client with the lawyer's specialized knowledge while simultaneously preying on the client's relative ignorance. The result is that the client may be pressed to agree to hire the lawyer for fear of losing out on legal rights and remedies that the client does not fully understand or, because the directly solicited client has little time to compare the fees and qualities of competing lawyers, the client may employ the wrong lawyer or agree to pay too much.
 
 
 27
 CPAs also have (and are perceived to have) knowledge beyond that of their potential clients which CPAs could well use to entice or to intimidate clients. For example, CPAs provide tax advisory services and financial management services to clients, when many of these prospective clients may be ignorant of their potential rights and of their potential liabilities. To think that clients may be as vulnerable to a seemingly knowledgeable CPA as accident victims are to an ambulance chasing attorney is not unreasonable. In addition, by virtue of having the title "certified public accountant" bestowed upon him by a state, a CPA is cloaked with an aura of competence that can overawe prospective clients (just as easily as a persuasive lawyer could) due to the appearance of special knowledge that is associated with his state licensure.* In the light of their specialized, professional knowledge, CPAs can be forceful and persuasive. Anyone who has ever signed, without fully understanding, a tax return or other financial statement prepared by a CPA simply because the CPA says "You sign here," knows just how persuasive a CPA can be.
 
 
 28
 Some differences in the circumstances surrounding solicitation of clients by lawyers and solicitation by CPAs undeniably exist; and, in general, the state's interest in regulating the legal profession (to the extent that lawyers as a group may still be seen as officers of the state's courts) may possibly be a bit greater. But I think for the purpose of constitutional analysis, the two professions are more alike than they are different. For instance, it may well be true that in most audit engagements potential clients of CPAs will not be under the kind of emotional distress that a potential personal injury client would be under when solicited by a lawyer. But nothing said in Ohralik seems to limit rules against in-person solicitation of clients by lawyers to rules barring soliciting personal injury clients in distress. In addition, as the Supreme Court noted in United States v. Arthur Young and Co., 465 U.S. 805, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984), a client has a great deal to lose, for example, if an auditor gives a qualified, adverse or disclaimed opinion as to the accuracy of a company's financial records. Id. at 818 n. 13, 104 S.Ct. at 1503 n. 13. As such, while a soliciting CPA may not be in the posture of addressing an injured person, he can easily be in the position of addressing a client who has everything to gain from a glowing, unquestioning opinion, and everything to lose from any less favorable opinion. So, in addition to the problems that lurk whenever professionals are allowed to engage in face-to-face solicitation, there is an incentive for fraudulent CPAs to solicit clients by promising to overlook financial misstatements or by promising to give a favorable review. See Id., 436 U.S. at 461, 98 S.Ct. at 1921.
 
 
 29
 We should also recall how hard it is for a state to monitor in-person solicitations. Because of the heavy reliance that the public places in the accuracy of financial statements reviewed by CPAs, Florida Bank v. Max Mitchell & Co., 558 So.2d 9 (1990), and for other reasons that seem to apply to professionals in general, there is a strong state interest that CPAs be prevented from compromising their integrity by soliciting clients underhandedly. And, a ban on in-person solicitation is directly related to that state interest.
 
 
 30
 In Ohralik, the Court specifically noted that a "state does not lose its power to regulate commercial activity deemed harmful to the public wherever speech is a component of the activity." Ohralik, 436 U.S. at 456, 98 S.Ct. at 1919. Therefore, simply because Florida's regulation involves speech does not mean that the regulation must be struck down on constitutional grounds. The Ohralik Court said that "procurement of remunerative employment is a subject only marginally affected with First Amendment concerns. It falls within the State's proper sphere of economic and professional regulation." Id. at 459, 98 S.Ct. at 1920 (citations omitted). This point is to me the important one.
 
 
 31
 The First Amendment provides greater or lesser protection to speech depending on its context, that is, whether the speech is political, commercial or something else. The degree of protection afforded commercial speech is toward the low end of the scale. See Ohralik, 436 U.S. at 456, 98 S.Ct. at 1918 ("[C]ommercial speech [enjoys] a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values...."). And, I believe the degree of protection from state interference is still lower when the states are carrying out their traditional and important job of policing the professions. The Ohralik Court specifically recognized that "[w]hile entitled to some constitutional protection," a professional's conduct is "subject to regulation in furtherance of important state interests." Id. at 459, 98 S.Ct. at 1920.
 
 
 32
 Even if I personally questioned that the Florida rule is necessary for an ordered CPA profession, it would not be my place just to second guess state officials about the state rule's wisdom or effectiveness. What is important for me to see is that reasonable people, such as those that I expect comprise the Florida Board of Accountancy, could think that the rule against in-person solicitation of clients functions to assure greater competence of CPAs, more reasoned selection of CPAs by lay people, and the accuracy of audit statements upon which the public relies. And, even if a less sweeping rule might do, that circumstance would be of no great significance. I cannot say that the rule Florida has chosen is an unreasonable solution to the problems inherent in uninvited, in-person solicitations of clients for profit. See Board of Trustees of the State University of New York v. Fox, 492 U.S. 469, 480, 109 S.Ct. 3028, 3035, 106 L.Ed.2d 388 (1989) (manner of regulating speech need not be "absolutely the least severe that will achieve the desired end"; fit between ends and means need only be "reasonable").
 
 
 33
 I would uphold the Florida rule as a legitimate use of the state's authority to regulate a profession within its borders and, therefore, would vacate the judgment of the district court.
 
 
 
 *
 Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 [1]
 Pursuant to Fla.Stat.Ann. § 473.323(1)(1) (West 1991), a CPA's engaging in "direct, in person, uninvited solicitation of a specific potential client" constitutes grounds for disciplinary action. Fla.Admin.Code Ann. r. 21A-24.002(3) (1991) defines a prohibited solicitation as "any communication which directly or implicitly requests an immediate oral response from the recipient." The regulation specifically states that "[u]ninvited in-person visits or conversations or telephone calls to a specific potential client are prohibited."
 
 
 [2]
 O.C.G.A. § 43-3-35(i) (1988)
 
 
 [3]
 Tex.Rev.Civ.Stat.Ann. art. 41a-1, § 6(a)(2) (West 1991)
 
 
 [4]
 See United States v. State Board of Certified Public Accountants of Louisiana, Civ. No. 83-1947, 1987 WL 7905 (E.D.La. Mar. 11, 1987) (complaint alleging that restraints on advertising and solicitation violated antitrust laws dismissed on ground that legislature had authorized restraints)
 
 
 [5]
 The Board also argues that the district court erred by granting summary judgment in this case. Since we do not find any material factual disputes which would require resolution at trial, we see no merit to that argument. We will, therefore, address only the question of law decided by the district court
 
 
 [6]
 The attest function is the issuance of an independent opinion regarding a client's financial stability based on an audit or review of a client's financial statements. Only CPAs perform the attest function
 
 
 [7]
 The First Amendment, as applied to the states by the Fourteenth Amendment, protects commercial speech from unjustified governmental regulation. Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557, 561, 100 S.Ct. 2343, 2348, 65 L.Ed.2d 341 (1980)
 
 
 [8]
 The first two prongs of the Central Hudson test are met. The speech in which Fane wishes to engage concerns a lawful activity and is not misleading; Florida's interest in regulating the accountancy profession is substantial
 
 
 [9]
 CPAs who violate Florida statutes regulating the practice of public accounting can be punished by penalties ranging from fines to license revocation. See Fla.Stat.Ann. § 473.323(3)(b), (c) (West 1991)
 
 
 [10]
 Because we find that Florida's ban is an impermissible restriction of commercial speech in violation of the First Amendment, we need not address Fane's equal protection argument
 
 
 [11]
 Fane objects to our consideration of the Board's time, place, and manner argument because the Board did not present it to the district court. Although we generally decline to consider a legal theory that was not raised at the district court level, we have the discretion to consider an argument first made on appeal. Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 989 (11th Cir.1982). We may exercise that discretion if the omitted issue involves a pure question of law and if refusal to consider it would result in a miscarriage of justice. Id. at 989-90. Consideration of legal arguments not presented to the district court is especially appropriate on appeal from summary judgment. Id. at 990. Consequently, we have considered the Board's argument, but find that it has no merit
 
 
 [12]
 Ohralik solicited business from two young accident victims, approaching one while she lay in traction in a hospital bed. He employed a concealed tape recorder to assist him in his solicitation efforts and emphasized the contingent nature of his fee to make his offer appear cost-free and irresistible. In addition, he refused to withdraw even when requested to do so by his client and misrepresented himself to her insurance company. Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 450-52, 98 S.Ct. 1912, 1915-17, 56 L.Ed.2d 444 (1978)
 
 
 [13]
 The state interests in Ohralik were found by the Court to be particularly strong because "lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.' " 436 U.S. at 460, 98 S.Ct. at 1920. Patently, this added concern is not present in this case
 
 
 *
 In Florida, non-licensed tax preparers, bookkeepers, management advisory consultants and the like are permitted to engage in direct, in-person, uninvited solicitation. These people, however, are neither permitted to perform the "attest function," which is specifically reserved for CPAs, nor to hold themselves out as having that assured special competence and reliability that the title "CPA" gives. For the state to condition its grant of special privilege and standing upon the acceptance of additional restraints, including some prophylactic rules, is not unreasonable