United States Court of Appeals,

Eleventh Circuit.

No. 94-8335.

Poleon GRIFFIN;  Nathaniel Solomon;  Jackie Moody, and All Others Similarly Situated, Plaintiffs-Appellants,

William Harrell, Plaintiff,

v.

KRAFT GENERAL FOODS, INC., d/b/a Kraft USA, and KGF Severance Pay Plan for Hourly Non-Union Employees, Defendants-Appellees.

Aug. 28, 1995.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:93-cv-1333-RLV), Robert L. Vining, Jr., Chief Judge.

Before HATCHETT and COX, Circuit Judges,  and JOHNSON, Senior Circuit Judge.

PER CURIAM:

Poleon Griffin, Nathaniel Solomon, William Harrell, and Jackie Moody (collectively "the plaintiffs") sued Kraft General Foods, Inc., ("KGF") and the KGF Severance Pay Plan for Hourly Non-Union Employees ("the Plan"),[1] seeking to invalidate the general releases in favor of KGF that the Plan required the plaintiffs to sign in order to receive severance benefits.  The plaintiffs claim that they did not waive their rights under the Age Discrimination in Employment Act "knowingly and voluntarily," as defined by the Older Workers Benefit Protection Act (OWBPA) § 201, 29 U.S.C. § 626(f) (Supp. V 1993).  The district court granted KGF summary judgment, and the plaintiffs appeal.  We reverse and remand.

I. Background

---

[1]For the sake of convenience, we refer to the defendants collectively as "KGF."

The parties essentially agree on the facts. KGF decided to close its Decatur, Georgia grocery products plant as part of a downsizing to eliminate excess production capacity. Four other KGF plants manufactured most of the same food products as the Decatur plant. To assist laid-off workers in their transition to other employment, KGF created the Plan. The Plan provides workers with continuing health benefits and severance pay in an amount determined by length of service.

The Plan's benefits were conditioned on each employee's execution of a general release. The release explicitly included a waiver of all rights under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634. KGF began to distribute the release forms around May 17, 1993. The plant manager informed employees in a memorandum accompanying the release that they had a maximum of forty-five days to consider and sign the releases in order to be eligible for Plan benefits. On June 2, however, the personnel manager issued a memorandum to the employees who would be terminated on June 25, indicating that they would have to return the executed release by June 4 in order to receive their severance pay on their last day of work. The explanation accompanying the releases also gave the ages and job titles of all the Decatur employees who would be laid off and hence were eligible for Plan benefits. KGF provided no age data regarding employees who were not eligible for Plan benefits.

The plaintiffs sued KGF to enjoin it from requiring releases

from the employees who had not yet signed them[2] and to void the releases of the employees who had signed.[3] The plaintiffs challenged the validity of the releases on several grounds. First, they claimed that their waivers of ADEA rights were not "knowing and voluntary" and were therefore invalid under the OWBPA. They also asserted that the waivers violate the public policy behind ERISA, and public policy in general. The district court granted KGF summary judgment on all claims, and the plaintiffs appeal.

II. Issues and Standard of Review

The plaintiffs raise three issues requiring discussion.[4] First, the employees challenge the district court's holding that their waivers of ADEA rights were "knowing and voluntary" under OWBPA § 201(f)(1)(H)(ii), 29 U.S.C. § 626(f)(1)(H)(ii), despite KGF's failure to provide the plaintiffs with the ages of retained employees in the "same job classification or organizational unit" at other KGF plants. Second, the plaintiffs contend that the district court erroneously failed to consider circumstances not mentioned in the OWBPA that render the waiver of their ADEA rights

---

[2]According to the plaintiffs' uncontroverted representation in their brief, all employees have now signed the release.

[3]Although the plaintiffs applied for class certification in their complaint, to date no class has been certified.

[4]In addition to the issues listed in the text, the plaintiffs challenge the district court's holding that conditioning Plan eligibility on waiver of ERISA rights does not violate public policy. Second, they claim error in the district court's determination that the release did not require them to waive any claims that would arise in the future. Third, the plaintiffs challenge the district court's conclusion that KGF did not, as the OWBPA requires, provide them with at least forty-five days to consider the waiver. We find no reversible error in the district court's resolution of these issues.

not knowing and voluntary. Finally, the plaintiffs maintain that the district court incorrectly concluded that the required waiver of ADEA rights did not violate the ADEA even though KGF provided ADEA-protected employees no more consideration than non-ADEA-protected employees.

We review summary judgments de novo, applying the same standard as the district court. *Fane v. Edenfield,* 945 F.2d 1514, 1516 (11th Cir.1991). Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party, here KGF, bears the burden of showing that there is no issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

III. Discussion

*A. Whether the ADEA Waiver Was "Knowing and Voluntary" Under the OWBPA*

*1. "Group or Class" Termination Information Requirement*

Section 201 of the OWBPA prohibits waiver of ADEA rights if the waiver is not "knowing and voluntary." 29 U.S.C. § 626(f)(1). The statute provides that an ADEA waiver is not "knowing and voluntary" unless the party that requested the waiver has met several requirements. *Id.* § 626(f)(1)(A)-(H). Pursuant to one requirement, waivers "requested in connection with an exit incentive or other employment termination program offered to a group or class of employees" are not knowing and voluntary unless

> (H) ... the employer (at the commencement of the period specified in subparagraph (F)) informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to-

....

> > (ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

*Id.* § 626(f)(1)(H)(ii).  The party asserting the validity of the waiver (in this case, KGF) has the burden of showing that the waiver was knowing and voluntary.  *Id.* § 626(f)(3).

The parties agree that the closure of the Decatur plant entailed the termination of a "group or class of employees," and that KGF provided the employees with the "job titles and ages of all individuals eligible" for the Plan.  Thus, the central substantive issue is whether KGF satisfied the second half of § 626(f)(1)(H)(ii)'s informational requirement in requesting the waivers.  In the context of KGF's motion for summary judgment, to prevail KGF must show that no issue of material fact remains as to whether KGF provided the Decatur workers the ages of all individuals in the same "job classification or organizational unit" who were *not* eligible for the Plan's severance benefits.

The employees and amicus curiae American Association of Retired Persons contend that § 626(f)(1)(H)(ii)'s language imposes a requirement to provide comparative information to the employees so that they may assess the possibility of age discrimination. This comparative information must, they assert, include the ages of employees at other plants that are not closed when, as here, the company may have considered for closure several plants producing similar products, and employees at other plants may assume the functions of the Decatur employees in making these food products.

Thus, they conclude, KGF is not entitled to judgment as a matter of law.

KGF and amicus curiae Equal Employment Advisory Council (EEAC) counter, and the district court held, that as a matter of law there are *no* "individuals in the same job classification or organizational unit who are not eligible or selected for the program" whose ages KGF can provide when the group or class termination arises from the closing of an entire plant. Thus, they conclude, KGF merits summary judgment even though it offered no evidence as to the job classifications or organizational units that employed the plaintiffs.[5]

We agree with the plaintiffs. To our knowledge, it is an issue of first impression whether "individuals in the same job classification or organizational unit" can include employees outside a single facility. Statutory construction begins with the

---

[5]KGF also contends, in effect, that (H)(ii) in fact does not have a second half. In support of this view, KGF argues that the statutory category of employees who are "not eligible" for the Plan does not include employees who are "not covered" by the Plan. Employees who were not laid off, KGF continues, were "not covered" by the Plan. Thus, KGF concludes, "KGF supplied age-related data as to *all* employees covered by and "eligible' to participate in the Plan, thereby complying with subsection (H)(ii)." (Appellee's Br. at 28.) We are unpersuaded. If there is indeed a meaningful difference between not being eligible for an ERISA plan and not being covered by it, we find no basis for drawing that distinction in (H)(ii).

Furthermore, we observe that according to the terms used in the summary plan description, any "regular, active, full-time, hourly non-union employee of KGF or any of its operating groups or subsidiaries working in the U.S." is "covered" by the termination plan. (R1-1-Exh. A at 3.) Under the Plan, a worker becomes "eligible" when employment is terminated due to a "permanent shutdown of a facility." (*Id.* at 4.) Thus, it appears that the Plan itself would consider retained employees at other grocery product plants to be "covered," but not "eligible."

words of the statute itself, *Norfolk & W. Ry. v. American Train Dispatchers Ass'n,* 499 U.S. 117, 127-29, 111 S.Ct. 1156, 1163, 113 L.Ed.2d 95 (1991), and the statutory language supports the plaintiffs' argument. Neither "job classification" nor "organizational unit" is defined, but neither phrase naturally includes only the employees at a single plant. Given the myriad organizational structures of the business world, it is easy to conceive of a unit that would span more than one plant. Likewise, employees at the company's other plants may perform the same jobs, at identical levels in the hierarchy, making the same products, for pay similar to the Decatur employees'. Furthermore, the statute does not in any other way limit the informational requirement to the ages of a single plant's noneligible employees. Plant closures are not excluded from "group or class" terminations, and the statute does not except plant closings from its conditions for knowing and voluntary waiver. Thus, to limit individuals in the same "job classification or organizational unit" to a single plant would be to read the statute's words contrary to their naturally broad meaning and to insert an exception where none is written.[6]

---

[6]The EEAC urges us to interpret a change in the Act's language before passage to imply that individuals in the same "job classification or organizational unit" cannot work outside a single plant or facility. The original bill reported by the Senate Labor and Human Resources Committee had in place of "job classification or organizational unit" the language "plant, facility, or organizational unit." S. 1511, 101st Cong., 2d Sess. § 201 (1990). The EEAC asserts that the unexplained replacement of "plant, facility" with "job classification" shows that Congress preferred a construction limiting "job classifications" to those in a single plant. We are not persuaded. If anything, the change from the concrete "plant, facility" to the abstract "job classification" suggests that Congress preferred a more open-ended reading of the statute that would take into account a variety of company structures.

This interpretation comports with the provision's purpose as expressed in the legislative history. The Senate Labor and Human Resources Committee, which approved the ultimate version of the OWBPA, stated that the purpose of § 626(f)(1)(H)(ii) was to "permit older workers to make more informed decisions in group termination and exit incentive programs." S.Rep. No. 263, 101st Cong., 2d Sess. 34 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1539. Without legislation, the Committee found, older workers in group or class terminations are generally unable "to determine whether the [termination] program gives rise to a valid claim under the ADEA." *Id.* This inability arises because

> employees affected by [group or class termination] programs have little or no basis to suspect that action is being taken based on their individual characteristics. Indeed, the employer generally advises them that the termination is *not* a function of their individual status. Under these circumstances, the need for adequate information and access to advice before waivers are signed is especially acute.

*Id.* at 1538 (emphasis in original). These concerns are no less valid in the plant closing context than in other group or class terminations. Thus, we conclude that individuals in the same "job classification or organizational unit" may include employees at other plants in the same company.

Therefore, whether there are in fact other individuals in the plaintiffs' "job classification or organizational unit" who were not eligible for Plan benefits is, in this case, not an issue of law but one of fact to be determined in light of § 626(f)(1)(H)(ii)'s purpose. In moving for summary judgment, KGF presented no evidence to show that this issue of fact is not in dispute. Indeed, we cannot ascertain from the record what the

plaintiffs' job titles or responsibilities were, let alone what KGF job classifications or organizational units are relevant in light of the provision's purpose of providing older employees with information that permits them better to evaluate any ADEA claims. Not having carried its burden, KGF is not entitled to summary judgment as to this issue.

*2. Nonstatutory Factors Showing That the Waiver Was Not "Knowing and Voluntary"*

The employees contend that the district court should have considered the "totality of the circumstances," in addition to the explicit OWBPA requirements, to determine if their waiver of ADEA rights was "knowing and voluntary." Prior to the OWBPA's enactment, a federal common-law rule based on the ADEA had emerged permitting ADEA waivers only if they were knowing and voluntary, as determined by an open-ended list of factors. *E.g., Gormin v. Brown-Forman Corp.,* 963 F.2d 323, 327 (11th Cir.1992); *Runyan v. National Cash Register Corp.,* 787 F.2d 1039, 1044 (6th Cir.1986). The OWBPA's language and legislative history strongly support the plaintiffs' contention that the nonstatutory circumstances considered in these cases survive the enactment of the OWBPA. The statute provides that "a waiver may not be considered knowing and voluntary unless *at a minimum* " the employer has complied with the statutory requirements. 29 U.S.C. § 626(f)(1) (emphasis added). Furthermore, the legislative history explicitly approves of an interpretation that the statutory requirements are not exclusive.

> Title II of the [OWBPA] provides ... that waivers not supervised by the EEOC may be valid and enforceable if they meet certain *threshold requirements and are otherwise shown to be knowing and voluntary....*

> ... The individual [waiving his rights] ... must have acted in the absence of fraud, duress, coercion, or mistake of material fact.  The Committee expects that courts reviewing the "knowing and voluntary" issue will scrutinize carefully *the complete circumstances* in which the waiver was executed.

S.Rep. No. 263, 101st Cong., 2d Sess. 31-32 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1537 (emphasis added).  Accordingly, we hold that nonstatutory circumstances, such as fraud, duress, or coercion in connection with the execution of the waiver, may render an ADEA waiver not "knowing and voluntary."

Although the employees argued before the district court that it should consider a number of nonstatutory factors, the district court did not do so.  We therefore leave it for the district court to consider on remand whether under the totality of the circumstances the waiver was valid.

*B. Lack of Additional Consideration for ADEA-Protected Employees*

The plaintiffs also argue that the Plan's requirement of ADEA waiver constitutes disparate treatment under the ADEA, 29 U.S.C. § 623(a)(1), because ADEA-protected employees received no additional consideration for waiving their ADEA claims, which younger workers lack.  The employees rely exclusively on *Dibiase v. SmithKline Beecham Corp.,* 847 F.Supp. 341 (E.D.Pa.1994), which held that a plan that required a general release in exchange for enhanced benefits discriminated against ADEA-protected workers because it did not provide ADEA-protected workers with additional consideration.  *Id.* at 348.  Since the parties filed their briefs in this case, the Third Circuit has reversed the Eastern District of Pennsylvania.  *DiBiase v. SmithKline Beecham Corp.,* 48 F.3d 719

(3d Cir.1995).

The Third Circuit concluded that a plan that conditioned enhanced benefits on the execution of releases, but provided no additional consideration to ADEA-protected workers, did not violate the ADEA. *Id.* The court reasoned that such a plan is not facially discriminatory, because the plan itself does not distinguish between older and younger workers; rather, the ADEA makes that distinction. *Id.* at 727. Furthermore, the fact that the employer required older employees to waive ADEA rights, as well as other rights, did not constitute disparate treatment. That an older employee has a right, the court reasoned, does not necessarily mean that the older employee has a claim. Therefore, older workers may or may not be waiving more valuable rights than younger workers. *Id.* at 728-29.

We find the Third Circuit's reasoning persuasive and therefore reject the plaintiffs' contention that the Plan violates the ADEA.

IV. Conclusion

For the foregoing reasons, we VACATE the summary judgment for the defendants and REMAND to the district court with instructions to enter partial summary judgment in favor of the defendants on all claims except those that the ADEA waiver was invalid pursuant to 29 U.S.C. § 626(f)(1)(H)(ii) and that the waiver was invalid in light of circumstances not enumerated in 29 U.S.C. § 626(f).

VACATED AND REMANDED WITH INSTRUCTIONS.