**Carolyn BURLISON; James Eady; Jerry Floyd; Robert Gunter; and Stephen Reinsch, Plaintiffs,**

v.

**MCDONALD'S CORPORATION, Defendant.**

**No. 1:03 CV 2984 WSD.**

United States District Court, N.D. Georgia, Atlanta Division.

May 6, 2005.

Harlan Stuart Miller, III, Miller Billips & Ates, Atlanta, GA, for Plaintiffs.

Beth T. Paxton, Jerry C. Newsome, Kelly D. Ludwick, Kenneth L. Dobkin, Lewis Traywick Duffie, Hunton & Williams LLP, Atlanta, GA, Kathleen D. Zylan, Duluth, GA, for Defendant.

### *ORDER*

DUFFEY, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment [70], Plaintiffs' Motion for Summary Judgment [75], and Plaintiffs' Motion to File a Reply to Defendant's Counterclaim for Declaratory Relief [103].[1] The fundamental

---

1. Also before the Court are Plaintiffs' Motion for Extension of Time to File Response to

issue before the Court is whether the releases executed by Plaintiffs, when they accepted separation packages in connection with Defendant's reorganization, bar their current claims under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621–634 (the "ADEA").

## I. BACKGROUND

This is an age discrimination action filed by five former employees[2] ("Plaintiffs") of Defendant McDonald's Corporation's ("Defendant") regional office in Atlanta, Georgia. (Def.'s Statement of Undisputed Material Facts ¶ 2.) Plaintiffs were separated from the company in connection with a Fall 2001 restructuring, during which Defendant substantially restructured its U.S. business operations. (Id.) The restructuring purportedly was intended to increase efficiency and competitiveness, promote accountability, and enhance effectiveness at all levels of the company. (Id. ¶ 9.) In addition to a reduction in some positions, Defendant structurally reorganized its field operations by reducing the number of U.S. divisions from five to three, and the number of regions from thirty-eight to twenty-one. (Id. ¶ 16.) Certain regions were eliminated entirely, while others were reconstituted to absorb portions of regions that were eliminated. (Id. ¶ 17.) The former Nashville and Greenville regions were eliminated entirely, and the Atlanta region was enlarged to encompass parts of these former regions. (Id. ¶¶ 18–19.)

The restructuring process included an individualized employee assessment process in which Defendant assessed all U.S. field office staff employees to determine their place in the new organization. (Id. ¶ 23.) Defendant's corporate office provided guidance and support to the field offices to ensure the assessment process was consistent, fair and objective. (Id. ¶ 24.) The employee assessments were performed by regional and divisional managers, and management for the new regions determined which employees would be offered positions in the new regions. (Id. ¶¶ 26–27.) Defendant anticipated approximately 500 to 700 layoffs would result from the restructuring. (Id. ¶ 28.) Information regarding the restructuring was available to all employees via the company's intranet. (Id. ¶¶ 29–30.)

William Lamar, Regional Manager of the former Atlanta region, was selected to serve as General Manager of the new Atlanta region. (Id. ¶¶ 35–36.) Defendant's corporate office provided guidelines for the structure of the new Atlanta region. (Id. ¶ 37.) Mr. Lamar collaborated with a group of senior managers to determine which employees would be offered positions in the new Atlanta region. (Id. ¶ 38.) Mr. Lamar considered employees from the Atlanta, Nashville and Greenville regions for employment in the new Atlanta region, and he made his final decisions in this regard on October 29, 2001. (Id. ¶ 47.) Approximately sixty-six employees were discharged in the Atlanta, Nashville and Greenville regions as a result of this process.

Each Plaintiff's employment with Defendant was terminated on or about November 1, 2001. (Id. ¶ 58.) Plaintiffs were each offered separation packages, which they accepted. In exchange for separation benefits, each Plaintiff signed an Agree-

Defendant's Motion for Summary Judgment [73], Defendant's Request for Leave to File a Reply to Plaintiffs' Response to Defendant's Statement of Undisputed Material Facts [88], and Plaintiffs' Motion to Strike the Supplemental Declaration of Beth Van Loon [105].

2. Plaintiffs are Carolyn Burlison, James Eady, Jerry Floyd, Robert Gunter and Stephen Reinsch. (Def.'s Statement of Undisputed Material Facts ¶¶ 3–7.)

ment and Release (the "Release") in which each Plaintiff waived various claims, including age discrimination claims under the ADEA. (*Id.* ¶ 81.) In connection with their Releases, Defendant provided each Plaintiff with an identical "Information Sheet for Atlanta/Nashville/Greenville Regions" (the "Information Sheet"). (*Id.* ¶ 84.) The Information Sheet provided a listing of the ages and job titles of 208 employees in the Atlanta/Nashville/Greenville regions. The Information Sheet included the employees from the Atlanta/Nashville/Greenville regions who "will be involuntarily separated from their employment and are eligible for the program," and those employees from the Atlanta/Nashville/Greenville regions who "hold the same job title or are in the same job classification as any involuntarily separated employee within the department but will not be separated involuntarily from their employment ...." (*Id.* ¶ 87.)

## II. DISCUSSION

### A. *The Parties' Motions for Summary Judgment*

■ The parties' motions for summary judgment are limited to the issue of whether Plaintiffs' claims are barred by the Releases they signed in exchange for separation benefits. The Releases include an express waiver of all rights under the ADEA. Plaintiffs challenge the validity of the Releases under the Older Workers Benefit Protection Act (the "OWBPA"), 29 U.S.C. § 626(f). The OWBPA sets forth eight mandatory statutory elements of a "knowing and voluntary" waiver of ADEA claims. Plaintiffs claim that because Defendant did not satisfy the informational requirements of the OWBPA, Plaintiffs' waivers were not "knowing and voluntary" and thus not enforceable against them. Defendant argues it fully complied with the OWBPA, that Plaintiffs' waivers were knowing and voluntary, and that Plaintiffs'

claims must be dismissed because they are barred by the Releases. The issue before the Court is whether the information provided by Defendant to Plaintiffs satisfied the requirements of the OWBPA.

"The policy of the OWBPA is ... clear from its title: It is designed to protect the rights and benefits of older workers. The OWBPA implements Congress' policy via a strict, unqualified statutory stricture on waivers ...." *Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, 427, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998). The OWBPA provides that "[a]n individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary." 29 U.S.C. § 626(f)(1). To be "knowing and voluntary," a waiver must, "at a minimum," satisfy certain enumerated requirements. *See id.* § 626(f)(1)(A)-(H). The purpose of these requirements is to ensure older employees are provided with information necessary to evaluate any potential ADEA claims before deciding to release them. *Griffin v. Kraft Gen. Foods, Inc.,* 62 F.3d 368, 373 (11th Cir.1995).

The parties have stipulated that all but one of the OWBPA's requirements have been met. The sole requirement at issue in this case is set forth in § 626(f)(1)(H):

if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer (at the commencement of the period specified in subparagraph (F)) [must] inform[ ] the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to—

(i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and

(ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

29 U.S.C. § 626(f)(1)(H). The parties do not dispute that the Releases were signed in connection with an employment termination program. The dispute concerns subparagraph (ii). Plaintiffs contend Defendant failed to comply with subparagraph (ii) because the information provided to Plaintiffs was underinclusive in some respects, overinclusive in others, and inaccurate. As the party asserting the validity of the waiver, Defendant has the burden of proving that Plaintiffs' waivers were knowing and voluntary within the meaning of the OWBPA. *Griffin,* 62 F.3d at 371.

Plaintiffs first contend the Information Sheet fails to satisfy the first clause of § 626(f)(1)(H)(ii) because Defendant did not disclose the names and ages of all employees actually "selected for the program." (Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J. at 10.) Plaintiffs contend, and Defendant does not dispute, they were provided with information regarding the sixty-six employees selected for discharge in the Atlanta, Nashville and Greenville regions, but were not provided information regarding the 500–700 employees discharged across the country. Because Defendant did not provide the "job title" and "age" data as to all employees selected for discharge, Plaintiffs contend "the Information Sheet fails to satisfy the plain language of the statute." (*Id.* at 11.)

Defendant argues Plaintiffs contort the statute by creating two subsections within § 626(f)(1)(H)(ii), and that Plaintiffs' interpretation would "mandate[ ] that employers bombard employees with nationwide, across-the-board comparative employee information in any nationwide restructuring, even where (as here) the selection/offer decisions were made independently on a local basis." (Def.'s Reply Br. in Supp. of Mot. for Summ. J. at 17–18.) Defendant also argues that to the extent any ambiguity in the statute exists, the Department of Labor's regulations make clear the scope of the employee list should be defined by the "decisional unit," which "reflect[s] the process by which an employer chose certain employees for a program and ruled out others from that program." (*Id.*) *See* 29 C.F.R. § 1625.22(f)(3)(i)(B) (2005). Because the proper decisional unit for Plaintiffs included employees from the Atlanta, Nashville and Greenville regions, Defendant contends it properly provided information about these employees, and only these employees, to Plaintiffs. The issue before the Court is whether subparagraph (ii) contains two obligations as Plaintiffs contend or an integrated obligation limited to a single scope. Defendant's contention that Plaintiffs improperly parse this provision into two subsections is not persuasive. The Court finds there are two obligations. The first requirement is that Defendant provide "the job titles and ages of all individuals eligible or selected for this program." 29 U.S.C. § 626(f)(1)(H)(ii). The second requirement is that Defendant provide "the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program." *Id.*

"Statutory construction begins with the words of the statute itself . . . ." *Griffin,* 62 F.3d at 372. Here, § 626(f)(1)(H)(ii) requires that Defendant provide Plaintiffs information regarding "the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program." 29 U.S.C. § 626(f)(1)(H)(ii). That Congress intended employers to fulfill two separate requirements within § 626(f)(1)(H)(ii) is clear from the language of the statute itself.

*See Griffin,* 62 F.3d at 371 (noting the issue in the underlying case was "whether [the defendant] satisfied the second half of § 626(f)(1)(H)(ii)'s informational requirement in requesting the waivers"). Thus, for Plaintiffs' waiver of ADEA claims to be "knowing and voluntary," Defendant must satisfy each requirement of § 626(f)(1)(H)(ii).

Defendant contends the population of individuals selected for the program under the first clause of § 626(f)(1)(H)(ii), and thus the scope of the employee list required to be provided under the Department of Labor's regulations, is defined only as those individuals within an employee's "decisional unit"—not the company as a whole as Plaintiffs urge. (*See* Def.'s Reply Br. in Supp. of Mot. for Summ. J. at 18.) The problem, however, with relying on the "decisional unit" to identify the scope of employees necessarily included by the first clause of § 626(f)(1)(H)(ii), is the statutory language and the regulations themselves. Subsection (ii), logically and linguistically, contains two independent obligations. The first is to provide job titles and ages of those eligible or selected for the program. The second is to provide ages for all individuals in the same job classification or organizational unit who are not eligible or selected.

That these are independent obligations, the scopes of which are not coterminous, is indicated on the face of the statute. First, the comma between the two obligations indicates they are independent of each other. Second, the two obligations require different items of information to be provided to the employee: job titles and age data concerning individuals eligible or selected for the program, but only age data concerning individuals not eligible or selected for the program. That the statute also sets out different scopes of information to be provided to the employee—information concerning eligible or selected individuals

program-wide versus information concerning only those ineligible or non-selected individuals in the same job classification or organizational unit as the employee—is wholly consistent with this distinction. In short, had Congress intended these obligations to be integrated and with a single divisional-unit scope, it easily could have structured subparagraph (ii) to provide for this result. Instead, the statute, as drafted, clearly dictates these obligations are distinct and that they differ with respect to the types and scope of information required to be provided to employees.

In addition, the Department of Labor's regulations do not support Defendant's claim that the information required to be provided was limited to the "decisional unit." The regulations state:

> When identifying the scope of the "class, unit, or group," and "job classification or organizational unit," an employer should consider its organizational structure and decision-making process. A "decisional unit" is that portion of the employer's organizational structure from which the employer chose the persons who would be offered consideration for the signing of a waiver. The term "decisional unit" has been developed to reflect the process by which an employer chose certain employees for a program and ruled out others from that program.

29 C.F.R. § 1625.22(f)(3)(i)(B). The Court agrees these regulations provide appropriate guidance for interpreting the "class, unit, or group," and "job classification or organizational unit." The Court also believes Defendant has the better argument regarding the scope of the "decisional unit" at issue in this case and thus the interpretation of the second clause of § 626(f)(1)(H)(ii). However, the first clause of § 626(f)(1)(H)(ii) requires Defendant to provide "the job titles and ages of all individuals eligible or selected for the program ...." It would violate the lan-

guage of the statute to import the decisional-unit limitation from the second obligation under subparagraph (ii) and apply it to the first. The Department of Labor's regulations simply do not support Defendant's contention that the scope of the second obligation under subparagraph (ii) necessarily limits the requirements of the first obligation. The parties do not provide,[3] and the Court's research has not uncovered, any legal authority to support Defendant's position on this issue.

The Court, therefore, must determine the appropriate scope of the employee list. The first section requires information be provided regarding "all individuals" selected for the program. In contrast, the second section requires information be provided regarding "all individuals in the same job classification or organizational unit" not selected for the program. Thus, the population of "selected" individuals about whom an employer must provide information, which contains no limitations, is broader than the population of "not selected" individuals. Further contrasting the first and second clauses, the statute requires more information be provided regarding individuals selected for the program—"job titles and ages"—than it requires for individuals not selected for the program—"ages." The plain language of the statute obligates Defendant to provide information to Plaintiffs regarding the "job titles and ages" of all employees "selected for the program." The undisputed evidence is that this was not done.

The "program" is not limited to the "decisional unit" applicable to Plaintiffs, and thus the "program" most naturally would include the nationwide restructuring plan of the company.[4] Defendant contends such a definition would be untenable and would "bombard" employees with nationwide information. (Def.'s Reply Br. in Supp. of Mot. for Summ. J. at 17.) The Court does not agree. The information required by the second clause of § 626(f)(1)(H)(ii) is limited in scope by the "decisional unit." Therefore, as to those employees not selected for discharge, the employer need only provide information from the employee's "decisional unit," and the employee will not be "bombarded" with information about every employee nationwide. However, for those employees selected for discharge, the employer must provide information regarding age and job title. That Congress would broaden the scope of information about the more relevant population of individuals—those selected for the program—is sensible and consistent with the statutory language. In this case, the Court's reading of the statute would require Defendant to provide age and job title information regarding the 500–700 employees selected for discharge, and age information regarding the 208 employees in Plaintiffs' "decisional unit," regardless of whether they were selected for discharge or not. These strike the Court as reasonable sets of information to permit an employee to evaluate the practical,

---

3. Defendant cites *Tung v. Texaco Inc.*, 150 F.3d 206 (2d Cir.1998), as an example of an employee in a company-wide reduction in force being provided an employee list that was limited to his own department. (Def.'s Reply Br. in Supp. of Mot. for Summ. J. at 10–11.) This case is inapposite. The court in *Tung* did not opine on the propriety of the scope of the employee list at issue in that case, but instead found the employer had violated the OWBPA because it had not provided

the required information at the commencement of the period of time the employee was given to consider the agreement. *Id.* at 209–10.

4. The legislative history provides: "The trademark of involuntary termination programs is a standardized formula or package of employee benefits that is available to more than one employee." S.Rep. No. 101–263, 1990 U.S.C.C.A.N. 1509, 1538 (1990).

overall effect of the program and its effect on older workers in particular.[5]

"[T]he purpose of § 626(f)(1)(H)(ii) was to permit older workers to make more informed decisions in group termination and exit incentive programs." *Griffin,* 62 F.3d at 373 (quotation omitted). This Court's reading of the statutory language is consistent with the legislative intent of the OWBPA by ensuring an employee faced with a decision whether to sign a release will be provided with information necessary to evaluate any potential age discrimination claim. The Court believes Congress intended the scope of information provided to employees to be broadly interpreted.[6] Such an interpretation of the statutory language also is consistent with the Supreme Court's directive to apply the OWBPA's waiver provisions strictly. *See Oubre,* 522 U.S. at 427, 118 S.Ct. 838 ("The OWBPA implements Congress' policy via a strict, unqualified statutory stricture on waivers, and we are bound to take Congress at its word."). Here, with the limited information provided to Plaintiffs, Plaintiffs may not have been able to assess whether they had a potential claim under the ADEA, even if they sought the advice of an attorney. Plaintiffs were only provided with information about 66 of the more than 500 discharges resulting from Defendant's program. It is possible the merits of an age discrimination claim could not properly be evaluated under these conditions.[7] *See generally Raczak,* 103 F.3d at 1263 ("[U]sing very small sub-units could ... mask discrimination because it is much more difficult to show or perceive discrimination when only very small numbers are involved.").

The Court finds that Defendants did not provide the information required by § 626(f)(1)(H)(ii) and further finds, as a matter of law, that the Releases are not enforceable. Accordingly, summary judgment in favor of Defendant is not appropriate and summary judgment in favor of Plaintiffs is required on this issue.

B. *Plaintiffs' Motion to File a Reply to Defendant's Counterclaim*

 Plaintiffs filed their Complaint in this action on October 1, 2003.

---

5. The dual obligations imposed by subparagraph (ii) would, as a practical matter, provide Plaintiffs with valuable information to allow them to decide whether to execute the Releases in return for the benefits offered. The information provided pursuant to the first clause would allow them to evaluate the age impact of the program beyond just the Atlanta/Nashville/Greenville regions. The information in response to the second obligation of subparagraph (ii) permits an evaluation on whether regional impact was disproportional with respect to age.

6. The Court notes the decisions to discharge Plaintiffs were made at the regional level and, therefore, the national data regarding the age and job titles of terminated employees may have limited relevance when evaluating a potential ADEA claim. However, *Smith v. City of Jackson, Miss.,* 544 U.S. 228, 125 S.Ct. 1536, 1540, 161 L.Ed.2d 410 (2005), permitting claims of disparate impact under the ADEA, indicates such national data could, even in the absence of intent on behalf of the relevant decisionmaker, be relevant to the determination of the existence of a valid claim of age discrimination.

7. *Raczak v. Ameritech Corp.,* 103 F.3d 1257 (6th Cir.1997), is distinguishable on this basis. The *Raczak* court rejected the district court's finding that the defendants violated § 626(f)(1)(H)(ii) where discharged employees were broken down by age and salary grade rather than by age and job title as set forth in subsection (H)(ii). *Id.* at 1263–64. The court found the statutory requirements should not be rigidly applied and remanded the case for consideration focusing on the question of understandability. *Id.* While the *Raczak* court was faced with a possibly technical violation of the statutory requirements, the current proceedings involve a potentially more significant violation.

(Compl.[1].) On October 30, 2003, Defendant filed its Answer and Counterclaim for Declaratory Relief [3] in which it denied any wrongdoing and requested the Court to enter a declaratory judgment that the Releases executed by Plaintiffs are valid and enforceable and to dismiss the Complaint. On December 28, 2004, Plaintiffs requested leave to respond to Defendant's counterclaim.

Defendant claims Plaintiffs were required to file a response to Defendant's counterclaim within twenty days of service of the Answer. *See* Fed.R.Civ.P. 12(a)(2). Defendant argues that because Plaintiffs have not demonstrated good cause for their tardy response, the Court should dismiss Plaintiffs' Complaint with prejudice. Plaintiffs claim their Complaint specifically and directly refuted the contentions made in Defendant's counterclaim, and, despite a technical failure to comply with Rule 12(a)(2), Defendant is, as a practical matter, on notice of Plaintiffs' position on the counterclaim allegations and has not suffered prejudice from Plaintiffs' out-of-time filing of its response.[8]

The Court does not approve of Plaintiffs' failure to comply with the Federal Rules. However, because Plaintiffs have a meritorious defense to Defendant's counterclaim, and because "[m]ost importantly, defendant has demonstrated no undue prejudice to the defendant[ ] resulting from plaintiff[s]' failure to answer," *see Ochoa v. Principal Mutual Insurance Co.*, 144 F.R.D. 418, 420 (N.D.Ga.1992), the Court will permit Plaintiffs to file their untimely response to Defendant's counterclaim.

## III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment

 is **DENIED** and that Plaintiffs' Motion for Summary Judgment [75] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to File Reply to Defendant's Counterclaim for Declaratory Relief [103] is **GRANTED**.

Because the Court did not have to consider the Supplemental Declaration of Beth Van Loon, **IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike the Supplemental Declaration of Beth Van Loon [105] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Extension of Time to File Response to Defendant's Motion for Summary Judgment [73] and Defendant's Motion for Leave to File a Reply to Plaintiffs' Response to Defendant's Statement of Undisputed Material Facts [88] are **GRANTED NUNC PRO TUNC**.

---

8. The parties agreed to bifurcate discovery to address, as a threshold matter, the enforceability of the Releases. To this point in the litigation, the validity of the Release has been the principal issue.