[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 16, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-16014

_____

D. C. Docket No. 05-02193-CV-T-EAJ

JOSEPH WELLS,

Plaintiff-Appellant,

versus

XPEDX, a Division of International
Paper Co., a foreign corporation
authorized to do business in Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 16, 2009)

Before BARKETT and FAY, Circuit Judges,  and TRAGER,* District Judge.

_____
* Honorable David G. Trager, United States District Judge for the Eastern District of New York, sitting by designation.

PER CURIAM:

Joseph Wells appeals an adverse summary judgment in favor of his former employer Xpedx, a division of International Paper Corporation, on his claim for wrongful termination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01 et seq., the Federal Whistleblower Act, 42 U.S.C. § 2000e-3,[1] and the Florida Whistleblower Act, Fla. Stat. § 448.102(3).  The summary judgement was based on the district court's finding that Wells had executed a valid agreement to release all claims against Xpedx in exchange for a severance package and, alternatively, that Wells had failed as a matter of law to establish a prima facie case of age discrimination and could not establish that Xpdex's proffered non-discriminatory reasons for his dismissal were pretextual.[2]  The district court also denied Wells leave to amend his complaint and his summary judgment response to cite to the correct statute corresponding to his whistleblower claim[3] and declined to

_____

[1] Wells later conceded that this claim was invalid.

[2]  Because Wells's ADEA claim failed, the district court also dismissed his FCRA claim, on the grounds that the framework for evaluating ADEA cases also applies to FCRA cases. Reilly v. Duval County Pub. Schs., No:3:04-CV-1320-J-32MMH, 2006 WL 3130918, at *7 n.12 (M.D. Fla. Oct. 31, 20006).  Wells does not appeal this holding and we therefore do not address it.

[3] After conceding in his response to Xpedx's summary judgment motion that his federal whistleblower claim was invalid, Wells sought leave to amend his response to the motion and complaint to allege a proper whistleblower claim under the ADEA, 29 U.S.C. § 623(d).  The court denied Wells leave to amend, citing prejudice to Xpedx as well as the fact that Wells had

2

exercise supplemental jurisdiction over his Florida Whistleblower Act claim.

Wells appeals each of these rulings.[4]

In exchange for a generous severance package, Wells signed a Termination

Agreement that included a provision entitled "Release of Claims" and another

entitled "Covenant Not to Sue."  The "Release of Claims" section provided that

Wells

> waives and releases the Company from any and all claims and
> demands Employee may have based on Employee's employment with
> the Company or the termination of that employment.  This waiver and
> release includes, but is not limited to, a permanent and irrevocable
> waiver and release of any and all rights or claims under the Age
> Discrimination in Employment Act, . . .  and any other federal, state or
> local laws, ordinances, or regulations prohibiting employment
> discrimination or regulating the employment relationship or the terms
> and conditions of employment.  This release also includes an
> irrevocable waiver and release of any claims for breach of express or
> implied contract, including any contract of employment entered into
> prior to the date of this Agreement, and any other claims under any
> federal, state, or local statutory or common law relating in any way to
> the employment relationship . . . .

---

waited over one month after Xpedex filed its summary judgment motion to request the leave,
that the deadline for amendments to pleadings had long past, and that the discovery period had
ended.  The court therefore granted summary judgment to Xpedex on Wells's federal
whistleblower claims, and Wells appeals this holding.

[4] We review de novo a district court's grant of summary judgment, applying the same
legal standards as the district court.  See Whatley v. CNA Ins. Cos., 189 F.3d 1310, 1313 (11th
Cir. 1999).  Summary judgment is appropriate if the evidence before the court shows that there is
no genuine issue as to any material fact and that the moving party is entitled to a judgment as a
matter of law.  Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (internal marks and
citations omitted).  In making this determination, the court must view all evidence and make all
reasonable inferences in favor of the party opposing summary judgment.  Id.

Pursuant to the "Covenant Not to Sue," Wells expressly agreed not to "file a lawsuit with respect to any matter released in [the Release of Claims section] of this Agreement[.]"

When a termination agreement contains a waiver of the employee's age discrimination claim, the Older Workers Benefit Protection Act (OWBPA), 29 U.S.C. § 626(f), requires that the employer establish that the waiver is "knowing and voluntary." Id. § 626(f)(3); Burlison v. McDonald's Corp., 455 F.3d 1242, 1245 (11th Cir. 2006). There is no dispute that Xpdex has met five of the eight statutory factors required to establish the validity of the waiver set forth in § 626(f)(1)(A)-(H)[5] and, although Wells argues otherwise, we find that the remaining

---

[5]The statutory requirements are:

(1) the release must be written in a manner calculated to be understood by the employee signing the release, or by the average individual eligible to participate;
(2) the release must specifically refer to claims arising under the ADEA;
(3) the release must not purport to encompass claims that may arise after the date of execution;
(4) the employer must provide consideration for the waiver or release of ADEA claims above and beyond that to which the employee would otherwise already be entitled;
(5) the employee must be advised in writing to consult with an attorney prior to executing the agreement;
(6) the employee must be given at least 21 days within which to consider the agreement or 45 days to consider signing if the waiver is offered in connection with an "exit incentive or other employment termination";
(7) the release must allow the employee to revoke the agreement up to 7 days after signing; and
(8) if the release is offered in connection with an exit incentive or group termination program, the employer must provide information relating to the job titles and ages of those eligible for the program, and the corresponding information relating to employees in the same job titles who were not eligible or

4

three factors have also been satisfied.

First, because Wells testified unequivocally that he was the only one terminated, it is undisputed that Wells's termination was not part of a group "termination program" or a reduction in force, and therefore Wells was not statutorily entitled to information regarding the other employees eligible for the program. See 29 C.F.R. § 1625.22(f)(1)(iii)(B) ("Typically, an involuntary termination program is a standardized formula or package of benefits that is available to two or more employees . . . .") (emphasis added); 29 U.S.C. § 626(f)(1)(H). Although Wells argues that his Termination Agreement included a standardized package of benefits and that there is no requirement that the "two or more" employees be terminated at the same time, Wells has offered no evidence that any other employees were terminated at any time as part of his program.

Second, Wells argues that the Termination Agreement was not "written in a manner calculated to be understood by [the employee signing the release]." 29 U.S.C. § 626(f)(1)(A). We disagree. Xpedx has established that Wells was an educated business professional experienced in negotiating large, multi-million dollar contracts with large retailers. In addition, our own review of the "Release of

---

not selected for the program.

Thiessen v. Gen. Elec. Capital Corp., 232 F. Supp. 2d 1230, 1234-35 (D. Kan. 2002) (citations omitted); see 29 U.S.C. § 626(f)(1)(A)-(H). Wells challenges numbers (1), (5), and (8).

Claims" and "Covenant Not to Sue" provisions reveals that they were written in plain English and would be readily understandable by someone in Wells's position. Wells has offered no specific facts that raise a genuine issue for trial, see Celotex Corp. V. Catrett, 477 U.S. 317, 325 (1986), and we therefore find that Xpedx has demonstrated that the Termination Agreement was written in a manner calculated to be understood by Wells.

Third, Wells argues that because he never actually received advice from an attorney about the release, the factor requiring that he be "advised in writing to consult with an attorney prior to executing the agreement," 29 U.S.C. § 626(f)(1)(E), has not been met. We find no merit to Wells's argument on this issue, because the record is undisputed that Wells was advised in writing to consult with an attorney. That he never spoke to an attorney about the release is immaterial.

We note also that the parties do not dispute the absence of any non-statutory factors relevant to whether Wells knowingly and voluntarily waived his rights. See Griffin v. Kraft Gen. Foods, Inc., 62 F.3d 368, 373-74 (11th Cir. 1995); Gormin v. Brown-Forman Corp., 963 F.2d 323, 327 (11th Cir. 1992). For example, Wells has not alleged fraud, duress, or coercion. See Griffin, 62 F.3d at 373.

Finally, we agree with Xpedx that the evidence indicating that Wells

6

knowingly and voluntarily waived his ADEA claims also supports a finding that he knowingly and voluntarily waived his FCRA and Federal Whistleblower claims.[6] See, e.g., Alexander v. Gardner Denver Co., 415 U.S. 36, 52 n.15 (1974); Blackwell v. Cole Taylor Bank, 152 F.3d 666, 673 (7th Cir. 1998). We therefore decline to address the remainder of Wells's arguments. The judgment of the district court is

**AFFIRMED.**

---

[6] As noted above, the district court declined to exercise supplemental jurisdiction over Wells's Florida Whistleblower claim.