Eloy A. ROLE, Plaintiff–Appellant,

v.

EUREKA LODGE NO. 434, I.A. of M & A.W. AFL–CIO and Die–Matic Products, Inc., Defendants–Appellees.

Docket No. 04–2848–CV.

United States Court of Appeals, Second Circuit.

Argued: March 14, 2005.

Decided: March 23, 2005.

Eloy A. Role, pro se, New York, NY, for plaintiff-appellant.

Lynne P. Kramer, Ball Livingston LLP (Samer E. Khalaf, on the brief) Nutley, NJ, for defendant-appellee Eureka Lodge No. 434–I.A. of M & A.W., AFL–CIO.

Alan B. Pearl, Alan B. Pearl & Assoc., P.C., Syosset, NY, for defendant-appellee Die–Matic Products, Inc.

Before: STRAUB and WESLEY, Circuit Judges, and SESSIONS, Chief District Judge.[*]

PER CURIAM.

In August 2000 plaintiff-appellant Eloy A. Role filed in the United States District Court for the Eastern District of New York a complaint raising numerous federal and state causes of action against Die–Matic Products, Inc. ("Die–Matic"), and Eureka Lodge No. 434, I.A. of M & A.W., AFL–CIO ("Eureka Lodge"), arising from the termination of his employment at Die–Matic. On December 4, 2002, the parties appeared before Magistrate Judge Thomas E. Boyle to effect a settlement of all claims against Die–Matic and Eureka Lodge, excluding plaintiff's then-pending workers' compensation claim.

At the settlement hearing Role was represented by Bernard Weinreb, Esq.; Alan B. Pearl, Esq., and Samer E. Khalaf, Esq., appeared for Die–Matic and Eureka Lodge, respectively. During the hearing Pearl read into the record the details of the agreed-to settlement. In rough terms, it provided that, in exchange for discharging the defendants from claims relating to the pending lawsuit, Role would receive $15,000 from the defendants, divided between two checks, one made payable to Role and the other to Weinreb.[1] After the terms of the settlement were established, Role, at the request of Magistrate Judge Boyle, took the witness stand and was sworn. Magistrate Judge Boyle then engaged Role in an extensive colloquy to ascertain Role's understanding of the terms of the settlement, to confirm his agreement to those terms, and to record Role's stipulation to the dismissal of all pending claims against Die–Matic and Eureka Lodge. Given the relevance of that exchange to our decision today, we reproduce part of the transcript below.

THE COURT: All right. Good afternoon, Mr Role. All this legal language— I just want to explain it to you in regular terms so you understand what's going on. There was an incident that arose between the union and the employer that are named defendants in this case. By this settlement, what you're doing is resolving any claims that you have with the exception of a worker's comp claim that may outstanding [sic]. But all other claims are withdrawn that are made in this litigation. And you're foregoing [sic] the right to bring any other claims that may arise out of the course of your employment and your union membership with the defendants before the Court. Let me get a little bit more specific. There was a motion— a request by you, I think before Mr. Weinreb got involved in the case, to add a discrimination claim. And the Court had never ruled on that. Instead we set it down for a conference today. That would be included. So it's not only the claims that are asserted, it's any potential claims that you may have against either of these defendants before the Court. In return you are going to be paid $15,000. Do you understand what the division is between you and your attorney?

MR. ROLE: Yes, I do, your Honor.

. . .

* The Honorable William K. Sessions, III, Chief Judge, United States District Court for the District of Vermont, sitting by designation.

1. At Role's request, the division of the settlement funds between Role and Weinreb was not made part of the settlement hearing record. The division, which is a point of contention on this appeal, is part of the record before us as copied images of two checks made out by Die–Matic, one to Weinreb in the amount of $5,000, and one to Role in the amount of $10,000.

THE COURT: So I don't want there to be any misunderstandings as far as the division of the proceeds.

MR. ROLE: Yes.

THE COURT: But, at your request, I will not go into it any further. You are satisfied that you and Mr. Weinreb—

MR. ROLE: Yes, I do, your Honor.

THE COURT:— have an understanding with regard to the division—

MR. ROLE: I do.

THE COURT:— of the $15,000. Is that correct?

MR. ROLE: I do.

THE COURT: Good. You understand that by entering into this settlement today, it brings a conclusion to this litigation that's been going on in this court for about two years now.

MR. ROLE: I do, your Honor.

THE COURT: It also means that you can't wake up tomorrow or two months from tomorrow and say you know, I don't think that settlement was fair.

MR. ROLE: I will not.

THE COURT: I want to go back and relitigate this because I should have gone to a jury. So this decision today is final.

MR. ROLE: I do understand what you say, your Honor.

THE COURT: You understand that and you agree with that?

MR. ROLE: Perfectly, I do agree.

THE COURT: And you understand that you have an obligation to keep this confidential?

MR. ROLE: I do.

THE COURT: And you'll receive one check and then you will receive a 1099 for the entire proceeds.

MR. ROLE: I'm aware of that.

THE COURT: Which would be the check that's made payable to Mr. Weinreb as well as the check to you.

MR. ROLE: Correct, I already agree; yeah.

THE COURT: Okay. And that's for income tax purposes.

MR. ROLE: Yes, sir, your Honor.

THE COURT: And you're in agreement? And you accept those terms?

MR. ROLE: I do accept all the terms. I understood what your Honor told me and am fully aware of the scope of the settlement.

THE COURT: Is there anything you would like to say?

MR. ROLE: Nothing.

THE COURT: Okay. I thank you very much. You can step down. All right. The settlement is so ordered on the record. It's my understanding that the checks will be paid prior to Christmas, I think that was the representation. And so I am going to direct the parties to file a stipulation of a discontinuance. Let's say by some time in early January. January 10? At this time I am so ordering the stipulation and settlement of this action on the record. And I'm directing the clerk of the court to close this file subject to receipt of the stipulation of discontinuance from the parties.

The District Court then dismissed the case without prejudice to reopen should the settlement not be consummated. Role received $15,000 soon thereafter. However, before any stipulation of dismissal was filed, Role, apparently, had a change of heart. During a hearing held before Magistrate Judge Boyle on January 28, 2003, at which Role, Weinreb, Pearl, and Khalaf were all present, Role notified the court that he wanted to withdraw his settlement agreement, principally because he believed, erroneously, that the settlement would compromise his pending workers' compensation claim and a civil action pending in the United States District Court for

the District of New Jersey. Role also expressed some misgivings relating to the one-third contingency fee paid to Weinreb as part of the settlement. Magistrate Judge Boyle reassured Role that the settlement that he had entered into in no way affected his workers' compensation claim or his New Jersey action, a point with which all counsel agreed. The Court then directed Weinreb to turn over the settlement checks to the custody of the Court pending resolution of Role's contest with Weinreb over the contingency fee. Finally, Magistrate Judge Boyle set a motion schedule for Role's proposed motion to vacate the settlement.

On February 3, 2003, Role filed a motion, supported by a sworn affidavit, to disqualify Magistrate Judge Boyle from further supervision of Role's suit based on alleged bias against Role evidenced principally by rulings on discovery matters. The District Court referred the motion to disqualify to Magistrate Judge Boyle on February 11, 2003. On February 7, 2003, Role filed his formal motion to vacate the settlement and reinstate his suit against Die–Matic and Eureka Lodge. Defendants responded to the motion, Role replied, and on July 17, 2003, Magistrate Judge Boyle submitted his Report and Recommendation to the District Court, advising that the motion be denied and the settlement enforced. On July 24, 2003, Role filed an objection to the Report and Recommendation arguing, principally, that it was issued in violation of 28 U.S.C. § 144 in that his motion to disqualify Magistrate Judge Boyle was still pending. On July 25, 2003, Magistrate Judge Boyle filed a Memorandum Opinion and Order denying the motion to disqualify. Role appealed that ruling via a writ of mandamus to this Court seeking to force the disqualification of Magistrate Judge Boyle and to compel the District Court to rule on the motion to vacate the settlement. We denied the motion to disqualify and, finding that any delay in deciding the motion to vacate the settlement was not unreasonable given the circumstances, declined to grant the writ. On April 12, 2004, the District Court issued an unpublished Memorandum of Decision and Order accepting Magistrate Judge Boyle's report and adopting his recommendation that the motion to vacate the settlement be denied. Role timely appealed. We assert jurisdiction under 28 U.S.C. § 1291 and affirm.

*The 28 U.S.C. §§ 144 and 455 Motion to Disqualify Magistrate Judge Boyle for Bias*

28 U.S.C. § 144 requires that "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." On appeal Role argues that, under this provision of the statute, Magistrate Judge Boyle was prohibited from considering, reviewing, and issuing any report and recommendation on the motion to vacate the settlement while Role's 28 U.S.C. §§ 144 and 455 motion was pending.

Given the sequence of events surrounding these motions Role appears to have a claim for error. His motion to disqualify was filed before his motion to vacate settlement. Nevertheless, the District Court referred the motion to vacate to Magistrate Judge Boyle; Magistrate Judge Boyle then took the motion to vacate *sub judice* and filed a Report and Recommendation with the District Court that, reviewing for clear error, the District Court adopted. In short, Magistrate Judge Boyle "proceed[ed][ ] further," 28 U.S.C.

§ 144, on the motion to vacate sentence while the motion to disqualify was pending. This, on first impression, seems to constitute a clear violation of the 28 U.S.C. § 144 requirement that judges subject to motions to disqualify proceed no further until all recusal issues are resolved.

■ While we are not entirely comfortable with the sequence in which these motions were entertained and disposed of by the court below, we find no error. Critical to the 28 U.S.C. § 144 forbearance provision is the requirement that a motion to disqualify include a "timely and sufficient affidavit" detailing the source and nature of the alleged bias. The principal basis upon which Magistrate Judge Boyle denied the 28 U.S.C. §§ 144 and 455 motion was that the motion and accompanying affidavit were insufficient as a matter of law because they alleged only disagreement with decisions Magistrate Judge Boyle made in his judicial role. Role appealed that decision through a writ of mandamus, which we declined to issue after denying the motion to compel Magistrate Judge Boyle's recusal. The law of the case is, then, that Role's 28 U.S.C. §§ 144 and 455 motion was insufficient as a matter of law. Therefore, it did not, and could not have, triggered the 28 U.S.C. § 144 forbearance requirement.

*Enforceability of the Settlement Agreement and Oral Stipulation of Dismissal*

Role's remaining arguments on appeal address whether the District Court erred in denying his motion to vacate the settlement. Federal Rule of Civil Procedure 41 sets forth the procedure for voluntary dismissal of an action. Rule 41 provides for dismissal of an action after service and filing of answers either by stipulation or by order of the court. In the present circumstances the settlement agreement, in detail, was made part of the record during a hearing before Magistrate Judge Boyle. In the section of the transcript reproduced above, Magistrate Judge Boyle demonstrates admirable care in confirming that Role knew the nature of the settlement agreement, that Role agreed to the terms, that Role understood he was agreeing to dismiss his claims against Die–Matic and Eureka Lodge by entering into the agreement, and that Role stipulated to dismiss the lawsuit with the full understanding that he could not "wake up tomorrow or two months from tomorrow and say you know, I don't think that settlement was fair." Role confirmed under oath his understanding of and agreement to these terms. Based upon Role's own statements and assurances, Magistrate Judge Boyle took notice of and endorsed the stipulation of dismissal and settlement.

■ The first question presented to us is whether the oral stipulation of dismissal entered into by the parties before Magistrate Judge Boyle is enforceable despite the fact that no formal stipulation, signed by the parties, was filed. In *Orsini v. Kugel* we had occasion to note that "an oral stipulation in open court can effect dismissal." 9 F.3d 1042, 1045 (2d Cir. 1993) (citations omitted). While this language was dicta in *Orsini*, we see no reason to change our view now, with the issue squarely presented. We therefore hold that a voluntary, clear, explicit, and unqualified stipulation of dismissal entered into by the parties in court and on the record is enforceable even if the agreement is never reduced to writing, signed, or filed, as contemplated by Fed.R.Civ.P. 41(a). *See Camacho v. Mancuso*, 53 F.3d 48, 51–52 (4th Cir.1995); *In re Furlong*, 885 F.2d 815, 817–18 (11th Cir.1989); *Carter v. Beverly Hills Sav. and Loan Assoc.*, 884 F.2d 1186, 1191 (9th Cir.1989); *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 195 (5th Cir.1980); *Pipeliners Local Union No.*

*798, Tulsa, Ok., v. Ellerd,* 503 F.2d 1193, 1199 (10th Cir.1974). The record of the December 4, 2002, proceedings before Magistrate Judge Boyle discloses such an agreement. We therefore find no procedural defect in the agreement and stipulation of dismissal.

Role's remaining arguments on appeal bear on the enforceability of the settlement agreement as a contract. In particular, Role complains that he was misled as to the scope of the settlement. Role also expresses misgivings regarding the amount of compensation due Weinreb under the settlement. As to the former, on the record before us it is clear that Role's workers' compensation claim was specifically excluded from the settlement agreement entered into before Magistrate Judge Boyle. It is equally clear that plaintiff's workers' compensation claims and his New Jersey suit, which is directed against defendants other than Die–Matic and Eureka Lodge, are not affected by the settlement. These exclusions have been made clear to Role repeatedly and we see no merit in his claim of mistake as to the scope of the agreement. We also agree with the District Court that the record discloses Role's intelligent and voluntarily agreement to the fee arrangement with Weinreb. In any event, we see no reason to vacate the entire agreement simply because Role may have a dispute with his attorney over compensation.

For the foregoing reasons the order of the District Court denying Role's motion to vacate settlement and reinstate his suit against defendants is AFFIRMED. Defendants' motion for sanctions against Role and for costs and attorneys' fees is DENIED.