06-0300-cv
Powell v. Omnicom

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2006

(Argued: February 8, 2007       Decided: August 7, 2007)

Docket No. 06-0300-cv

---------------------------------------------------------x

DOREEN POWELL,

Plaintiff-Appellant,

-- v. --

OMNICOM, BBDO/PHD,

Defendants-Appellees.

---------------------------------------------------------x

B e f o r e :  WINTER, WALKER, and SACK, Circuit Judges.

Appeal from a judgment of the United States District Court for the Southern District of New York (William H. Pauley III, Judge), denying plaintiff-appellant's motion under Fed. R. Civ. P. 60(b) to set aside a settlement agreement and reopen her civil action.

AFFIRMED.

ELIZABETH A. MASON, New York, New York, for Plaintiff-Appellant.

A. MICHAEL WEBER (Christina L. Feege, on the brief), Littler

-1-

Mendelson, P.C., New York, New York, <u>for Defendants-Appellees</u>.

JOHN M. WALKER, JR., <u>Circuit Judge</u>:

In this appeal from a May 18, 2005, judgment of the district court of the Southern District of New York (William H. Pauley III, <u>Judge</u>), the question is whether plaintiff-appellant Doreen Powell, who now has the legal equivalent of buyer's remorse, entered into a binding and enforceable settlement agreement with defendants-appellees Omnicom and BBDO/PHD that concluded their litigation. For the following reasons, we hold that the settlement agreement is fully enforceable and that the district court properly denied Powell's motion to reopen the case.

**BACKGROUND**

Powell, a 52-year-old African American woman, began working at BBDO, a subsidiary of Omnicom, in 1993. After she was promoted to vice president in 1994, she allegedly fell victim to numerous discriminatory acts relating to promotions, performance evaluations, pay, choice of accounts, and assignment of subordinates. Despite her complaints to management, Powell says nothing was done.

On September 26, 2002, BBDO fired Powell, asserting that it was because of her lack of seniority and failure to bill enough business. Powell claims that these reasons were pretextual because BBDO did not terminate many white employees who had less seniority and billed less business. She also claims that BBDO

-2-

retaliated against her by falsely reporting to the Department of Labor that she had been discharged for misconduct.

On February 3, 2004, Powell sued BBDO and Omnicom under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.; and various New York State and New York City law violations. On June 23, 2004, after several hours of negotiation, Powell, who was represented by counsel, and Omnicom agreed to an in-court settlement before Magistrate Judge James C. Francis, IV. Omnicom's counsel recited the terms of the settlement on the record:

- Neither party would admit any wrongdoing
- BBDO would pay Powell $35,000, from which no taxes would be withheld
- BBDO would write "a mutually agreed upon positive reference regarding Ms. Powell's employment with BBDO Detroit"
- BBDO would represent in writing to the Department of Labor that it made an error in stating that Powell was terminated for misconduct
- BBDO and Omnicom could still sue Powell for "malfeasance and other intentional conduct"
- Neither party would disparage the other
- Powell would never apply for employment with the defendants

-3-

• Powell would represent that she had no other claims pending against the defendants other than the federal claims being settled

• The agreement would remain confidential

The magistrate judge then asked Powell if the terms of the agreement were acceptable to her and whether "on the basis of agreeing to those terms that this case will be terminated with prejudice and cannot be reopened." Powell responded affirmatively on the record to both questions.

On June 29, 2004, the district court issued an order stating that it had been informed that "this action has been or will be settled." It ordered the action discontinued without prejudice to restore "if the application to restore the action is made within thirty (30) days of the date of this Order."

The parties attempted to reduce their agreement to writing, but Powell refused to sign. On July 22, 2004, the district court received a letter from Powell's counsel asking that the case be restored to the calendar. Counsel also requested that they be relieved from representation due to "irreconcilable differences" with Powell. Rather than restore the case to the calendar, the district court ordered the parties to appear at a conference on August 13, 2004.

At the conference, Powell accused her counsel of misrepresenting that the $35,000 settlement would be tax-free and pressuring her into accepting. Her counsel denied any

-4-

misconduct. She also claimed that Omnicom's reference letter was unsatisfactory because it only stated that her performance at BBDO was "satisfactory"; she wanted it to say that her performance was "exemplary." Powell's counsel said that Omnicom was "really working to try to refine the language to please Ms. Powell" and had offered to state that her performance was "fully satisfactory."

Finding that Powell seemed to be "a sophisticated and knowledgeable business woman," the district court concluded that the settlement was enforceable. It gave Powell the choice of taking exception to the ruling and proceeding with the case or, alternatively, working out the settlement's details. Powell chose the first option, and the district court relieved her counsel.

On March 11, 2005, Powell submitted affidavits pro se in support of a motion to vacate and set aside the settlement and restore the case to the calendar. The district court construed the affidavits as a motion to reopen under Fed. R. Civ. P. 60(b) and denied the motion, finding that Powell "knowingly and voluntarily entered into an in-court settlement agreement." Powell timely appealed.

**DISCUSSION**

Because Powell's case had already been closed, the district court did not abuse its discretion in construing her March 11 motion as a Rule 60(b) motion. See Lawrence v. Wink (In re

Lawrence), 293 F.3d 615, 623 (2d Cir. 2002). We review the denial of a Rule 60(b) motion for abuse of discretion. Rodriguez v. Mitchell, 252 F.3d 191, 200 (2d Cir. 2001); see also Fennell v. TLB Kent Co., 865 F.2d 498, 503 (2d Cir. 1989) (Feinberg, J., concurring) (involving decisions to restore a case to the calendar). We review the district court's factual findings, including whether a settlement agreement exists and whether the parties assented to it, for clear error. Omega Eng'g, Inc. v. Omega, S.A., 432 F.3d 437, 443 (2d Cir. 2005).

A settlement agreement is a contract that is interpreted according to general principles of contract law. Id. Once entered into, the contract is binding and conclusive. Janneh v. GAF Corp., 887 F.2d 432, 436 (2d Cir. 1989), abrogated on other grounds by Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863 (1994). When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that a choice simply because his assessment of the consequences was incorrect. United States v. Bank of N.Y., 14 F.3d 756, 759 (2d Cir. 1994).

Powell argues, however, that in these particular circumstances, the agreement was not binding because (1) it was never reduced to writing; (2) the parties never intended to be bound absent a writing; (3) it was made in violation of the Older Workers Benefit Protection Act ("OWBPA"), Pub. L. No. 101-433, 104 Stat. 978 (1990) (codified as 29 U.S.C. § 626(f)); and (4) the district court's July 1, 2004 order expressly gave her the

-6-

right to have the case restored to the calendar if she moved for such relief within 30 days of the issuance of the order.  We hold that the settlement agreement is binding and enforceable; it therefore concluded the litigation.

**I.    Requirement of a Writing**

Parties may enter into a binding contract orally, and the intention to commit an agreement to writing, standing alone, will not prevent contract formation.  Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1985) (applying New York law).[1] Consequently, a "voluntary, clear, explicit, and unqualified stipulation of dismissal entered into by the parties in court and on the record is enforceable even if the agreement is never reduced to writing, signed, or filed."[2]  Role v. Eureka Lodge No.

---

[1] It is unclear whether the settlement of federal claims is governed by New York law or federal common law.  The draft settlement agreement states that it is governed by New York law. The parties have not raised this issue and seem to agree, at least implicitly, that New York law applies.  In Ciaramella v. Reader's Digest Ass'n, 131 F.3d 320 (2d Cir. 1997), we declined to decide this question because New York law and federal common law were materially indistinguishable.  Id. at 322; see also Monaghan v. SZS 33 Assocs., 73 F.3d 1276, 1283 n.3 (2d Cir. 1996) ("[T]he federal rule regarding oral stipulations does not differ significantly from the New York rule.").  The same is true here; therefore, we will apply New York and federal common law interchangeably.

[2] Under New York law, the requirement that the settlement be on the record and in open court serves as a limited exception to the Statute of Frauds.  Jacobs v. Jacobs, 645 N.Y.S.2d 342, 344-45 (App. Div. 3d Dep't 1996); see also N.Y. C.P.L.R. 2104 ("An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an

434, I.A. of M & A.W. AFL-CIO, 402 F.3d 314, 318 (2d Cir. 2005) (per curiam).  The settlement remains binding even if a party has a change of heart between the time he agreed to the settlement and the time those terms are reduced to writing.  Millgard Corp. v. White Oak Corp., 224 F. Supp. 2d 425, 432 (D. Conn. 2002).  Here, Powell and Omnicom entered into a "voluntary, clear, explicit, and unqualified" settlement on the record in open court: Omnicom recited the terms of the agreement on the record, and Powell expressly assented on the record to those terms and the dismissal of the case.  Accordingly, the fact that the settlement was never reduced to writing is insufficient to render the settlement nonbinding.

**II.  The Parties' Intentions to be Bound Absent a Writing**

Powell contends that the parties did not intend to be bound by the settlement in the absence of a writing.  Parties who do not intend to be bound until the agreement is reduced to a signed writing are not bound until that time.  Ciaramella, 131 F.3d at 322.  Deciding whether the parties intended to be bound in the absence of a writing requires us to consider (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the

order and entered.").

-8-

agreement at issue is the type of contract that is usually committed to writing. Winston, 777 F.2d at 80; see also Ciaramella, 131 F.3d at 323. "No single factor is decisive, but each provides significant guidance." Ciaramella, 131 F.3d at 323. After considering these factors, we conclude that the parties in this case intended to be bound notwithstanding the absence of a writing.

First, neither party made any express reservation to be bound only by a writing. At the June 23, 2004 hearing, Omnicom's attorney stated without objection that the "parties have agreed that the formal settlement documents will incorporate the following terms and conditions," suggesting that the settlement's reduction to writing was only a formality.

Second, there was partial performance of the settlement agreement. At the June 23, 2004 hearing, Omnicom agreed to draft a reference letter for Powell; Omnicom drafted this letter, with the only remaining detail being whether it would say that Powell's performance was "fully satisfactory" or "exemplary."

Third, the parties agreed to all of the material terms of the settlement agreement at the June 23, 2004 hearing. Granted, Powell later took issue with some of the language in the draft agreement to which she had acceded at the June 23 hearing. This includes principally BBDO's right to take legal action against her for gross malfeasance or intentional misconduct, which Omnicom ultimately removed. We have held that even "minor" or

"technical" changes arising from negotiations over the written language of an agreement can weigh against a conclusion that the parties intended to be bound absent a formal writing.  See Winston, 777 F.2d at 82-83.  Such changes are relevant, however, only if they show that there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing "satisfactory to both sides in every respect."  See id.; see also R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 76 (2d Cir. 1984) ("A . . . factor is whether there was literally nothing left to negotiate or settle, so that all that remained to be done was to sign what had already been fully agreed to.").  Here, Powell and Omnicom agreed at the June 23, 2004 hearing that BBDO reserved the right to sue Powell; Powell's subsequent disagreement with, and Omnicom's eventual release of, that right do not suggest that the point was left to be negotiated after the hearing.

Powell argues that because the parties were unable to agree on a mutually satisfactory reference letter and because Omnicom has not removed the negative review from her personnel file, the parties did not agree to all the terms of the settlement.  This argument, however, misses the point: They are relevant to performance of the settlement rather than assent to its terms.

Powell also refers to certain representations in the draft agreement to which she never agreed in court.  These representations relate principally to the statutory requirements

-10-

for validly waiving rights under the ADEA (to be discussed further, infra) to effectuate settlement. See 29 U.S.C. § 626(f). Because these representations simply follow the legal preconditions for waiving rights under the ADEA, which was the entire point of the settlement, we cannot view them as additional terms subject to negotiation.

The fourth factor – whether this agreement is the kind that would normally be reduced to writing - is a closer question. We have held that a settlement, whose terms were not announced in open court, for $62,500 paid over several years "strongly suggest[ed]" that the parties would intend to be bound only by a writing. Winston, 777 F.2d at 83. Similarly, we have held that a settlement, also not announced in open court, containing perpetual rights similar to those in the settlement at issue would normally be put in writing. Ciaramella, 131 F.3d at 326. That settlement, like this one, contained provisions concerning how future requests for employee references would be handled, prohibiting the plaintiff from reapplying for employment with the defendant, and imposing confidentiality requirements. Id.

Unlike in Winston and Ciaramella, however, the terms of this agreement were announced on the record and assented to by the plaintiff in open court. In Ciaramella, we stated that "[s]ettlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." Id. (emphasis added). The significance of announcing the terms of an

-11-

agreement on the record in open court is to ensure that there are at least "some formal entries . . . to memorialize the critical litigation events," <u>Willgerodt v. Hohri</u>, 953 F. Supp. 557, 560 (S.D.N.Y. 1997) (quoting <u>Dolgin v. Dolgin (In re Dolgin Eldert Corp.)</u>, 31 N.Y.2d 1, 10 (1972)), and to perform a "cautionary function" whereby the parties' acceptance is considered and deliberate, <u>see</u> <u>Tocker v. City of N.Y.</u>, 802 N.Y.S.2d 147, 148 (App. Div. 1st Dep't 2005).  The in-court announcement here functioned in a manner akin to that of a memorializing writing. As a result, this factor, viewed in the light most favorable to Powell, is neutral as to whether the parties intended to be bound only by a writing.

Consequently, at least three of the four factors favor the conclusion that the parties intended to be bound in the absence of a writing.  We therefore conclude that Powell was bound by the in-court, oral settlement.

**III. Powell's Rights Under the OWBPA**

Powell next argues that the settlement is invalid under the OWBPA because it did not meet the OWBPA's timing requirements. Her argument is without merit.[3]

---

[3] Whether the OWBPA applies to settlements made in-court and on the record is an open question in this circuit.  In the unpublished decision <u>Manning v. N.Y. Univ.</u>, No. 98-Civ.-3300(NRB), 2001 WL 963982, at *11-16 (S.D.N.Y. Aug. 22, 2001), the Southern District of New York held that the OWBPA does not apply under those circumstances.  On appeal, we expressly declined to decide the question.  <u>See</u> <u>Manning v. N.Y. Univ.</u>, 299 F.3d 156, 164 (2d Cir. 2002) (per curiam).  Because the parties

-12-

To protect the rights and benefits of older workers, Congress amended the ADEA in 1990 through the OWBPA by adding, inter alia, 29 U.S.C. § 626(f), which regulates employee waivers and releases under the ADEA. Hodge v. N.Y. Coll. of Podiatric Med., 157 F.3d 164, 166 (2d Cir. 1998); see also Oubre v. Entergy Operations, Inc., 522 U.S. 422, 426-27 (1998). Under the OWBPA, an individual may waive his rights only if the waiver is "knowing and voluntary." 29 U.S.C. § 626(f)(1). Section 626(f) provides specific statutory requirements for a "knowing and voluntary" waiver that the employer must meet in order for an employee to waive his ADEA claims. Tung v. Texaco Inc., 150 F.3d 206, 209 (2d Cir. 1998). The failure to meet these requirements renders the release unenforceable irrespective of general contract principles. See Oubre, 522 U.S. at 427.

Section 626(f)(1)'s requirements, which apply generally to waivers of ADEA claims, include, inter alia, that the individual be given "a period of at least 21 days within which to consider the agreement" and "a period of at least 7 days following the execution of such agreement . . . [to] revoke the agreement." 29 U.S.C. § 626(f)(1)(F), (G).

Powell cannot rely on those timing requirements because under § 626(f)(2), they do not apply to actions such as Powell's

assume that the OWBPA applies and we conclude that its requirements were met in any event, there is again no need for us to decide the question.

-13-

that are filed in court and allege age discrimination under 29 U.S.C. § 623.  See also Hodge, 157 F.3d at 166-67.  Section 626(f)(2) instead requires that "the individual [be] given a reasonable period of time within which to consider the settlement agreement."  The Equal Employment Opportunity Commission has interpreted this requirement to mean "reasonable under all the circumstances, including whether the individual is represented by counsel or has the assistance of counsel."  29 C.F.R. § 1625.22(g)(4).

Powell had a reasonable period of time to consider the settlement.  She was represented by counsel when the parties entered the settlement.  Further, Powell – a former corporate vice president and sophisticated business woman – had nearly two years between her termination and settlement negotiations to give considered thought to how she wished to resolve this dispute.  Congress imposed statutory requirements for waiver to ensure that "older workers are not coerced or manipulated into waiving their rights to seek legal relief under the ADEA."  Syverson v. Int'l Bus. Machs. Corp., 472 F.3d 1072, 1075-76 (9th Cir. 2007) (quoting S. Rep. No. 101-263, at 5 (1990)).  Recognizing that an employee is vulnerable and at an informational disadvantage just after he is terminated, the Senate report noted that an:

> employee who is terminated needs time to recover from the shock of losing a job, especially when that job was held for a long period.  The employee needs time to learn about the conditions of termination, including any benefits being offered by the employer.  Time also

-14-

is necessary to locate and consult with an attorney if the employee wants to determine what legal rights may exist.

S. Rep. No. 101-263 (1990), as reprinted in 1990 U.S.C.C.A.N. 1509, 1538-39. After the passage of nearly two years, Powell plainly was not under "shock" or time pressure to settle. And she advances no convincing arguments that she was. Therefore, while only a few hours elapsed between the beginning of settlement negotiations and Powell's assent to those terms in-court, this period of time was reasonable under the circumstances.

Powell does not advance any serious arguments that the other requirements of § 626(f)(2) were not met. The settlement agreement is therefore enforceable notwithstanding the OWBPA.

**IV. District Court's Refusal to Restore the Case**

Powell's final argument is that the district court erred by refusing to restore her case to the calendar when she requested on July 21, 2004 that it do so. She focuses on the district court's June 29, 2004 order, which she claims gave her a 30-day option to restore the case. She argues that because she made her request within the 30-day period, that order required the district court to grant it.

We acknowledge that the district court's order lacked clarity as to whether Powell was bound by the in-court settlement. The order began by stating, "[i]t having been reported to this Court that this action has been or will be

-15-

settled." The latter clause suggests that the parties had not settled the case. Moreover, the language with respect to restoring the action upon application suggests that the settlement was not yet binding and that she would be able to restore the action if she so chose.

Despite the order's wording, the district court did not abuse its discretion in denying Powell's motion based upon its investigation into the June 23, 2004 hearing. The district court did not simply ignore Powell's request; it promptly convened a conference to determine the settlement's enforceability and thoughtfully considered whether to restore the action to its calendar. Given the need for the district court to inquire into the matter and the district court's ability to reconsider any previous indications of its intended rulings, we cannot say that the district court abused its discretion in hearing from the parties and, as shown above, properly concluding that the settlement was binding. See Fennell, 865 F.2d at 503 (Feinberg, J., concurring). Moreover, we have previously affirmed a district court's refusal to reinstate because of an enforceable oral settlement after it dismissed the suit without prejudice to reopen if the parties could not consummate settlement. See Role, 402 F.3d at 318. We also defer to the district court's reasonable and implicit interpretation of its own order that it did not provide the parties with an unfettered option to reopen the case. Cf. Casse v. Key Bank Nat'l Ass'n (In re Casse), 198

-16-

F.3d 327, 334 (2d Cir. 1999) ("[A]n appellate court reviewing bankruptcy orders should defer to a district court's interpretation of its own order . . . ." (internal quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.