17-2700-bk
*In re: Lehman Brothers Holdings Inc.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of July, two thousand eighteen.

PRESENT:

> PETER W. HALL,
> SUSAN L. CARNEY,
> > *Circuit Judges*,
> JOHN G. KOELTL,[*]
> > *District Judge.*

_____

IN RE: LEHMAN BROTHERS HOLDINGS INC.

_____

SHINHAN BANK,

    *Appellant*,

       v.                                                                            No. 17-2700-bk

LEHMAN BROTHERS HOLDINGS INC., LEHMAN BROTHERS SPECIAL FINANCING INC.,

    *Appellees*.[**]

_____

[*] Judge John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

[**] The Clerk of Court is directed to amend the official caption to conform to the above.

FOR APPELLANT:            JOHN A. BICKS, K&L Gates LLP (Henry E. Shin, Robert T. Honeywell, Priya Chadha, and Brian D. Koosed, *on the brief*), New York, New York and Washington, D.C.

FOR APPELLEES:            CHRISTOPHER J. COX, Weil, Gotshal & Manges LLP (Jacqueline Marcus, *on the brief*), Redwood Shores, California and New York, New York.

Appeal from an order of the United States District Court for the Southern District of New York (Cote, *J.*) affirming an order of the United States Bankruptcy Court for the Southern District of New York (Chapman, *B.J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order entered on August 2, 2017, is **AFFIRMED**.

Appellant Shinhan Bank ("Shinhan") appeals the District Court's order dated August 2, 2017, which affirmed a Bankruptcy Court order enforcing a putative settlement agreement between Shinhan and appellee Lehman Brothers Holdings Inc. ("LBHI"). LBHI is the Chapter 11 bankruptcy plan administrator for appellee Lehman Brothers Special Financing Inc. ("LBSF" and, with LBHI, "Lehman"). On appeal to this Court, Shinhan renews its argument that the Bankruptcy Court misapplied the so-called *Winston* factors, *see generally Winston v. Mediafare Entm't Corp.*, 777 F.2d 78 (2d Cir. 1985), and thus erred in concluding that Shinhan reached a binding and enforceable settlement agreement with Lehman. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

**I.      Standard of review**

We conduct a "plenary" review of a bankruptcy court order when an appeal reaches us after district court review of that order, evaluating the bankruptcy court's "legal conclusions *de novo* and its factual findings for clear error." *In re N. New Eng. Tel. Operations*

2

*LLC*, 795 F.3d 343, 346 (2d Cir. 2015). Because the parties' intent to be bound to a settlement presents a question of fact, *see Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 322 (2d Cir. 1997); *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007), we review the Bankruptcy Court's order here for clear error, and will reverse the court's factual determination only if we have a "definite and firm conviction" that the court erred, *Ciaramella*, 131 F.3d at 323; *Winston*, 777 F.2d at 81.

## II. The *Winston* factors

As the District Court and Bankruptcy Court each recognized, the analysis set out in *Winston* governs our resolution of the question whether Shinhan bound itself to a settlement.[1] Under the *Winston* framework, we determine "whether the parties intended to be bound [to a settlement] in the absence of a document executed by both sides" by considering:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Id.* at 80. "No single factor is decisive, but each provides significant guidance." *Ciaramella*, 131 F.3d at 323. We therefore evaluate each of the *Winston* factors separately here and then assess them together.

**Factor 1: Express reservation of the right not to be bound**

Shinhan does not dispute that when, on April 20, 2016, its counsel emailed the mediator, the Honorable Ralph Mabey, and informed him that Shinhan agreed to Judge Mabey's proposed settlement amount, it did not expressly reserve the right not to be bound

---

[1] In similar cases in the past, we have declined to decide whether federal common law or state law governs the evaluation of putative contracts settling federal claims being adjudicated in New York, because "New York law and federal common law were materially indistinguishable." *Powell v. Omnicom*, 497 F.3d 124, 129 n.1 (2d Cir. 2007) (discussing *Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 322 (2d Cir. 1997)). No party here identifies any relevant difference regarding the purported settlement of Lehman's clawback claims in this bankruptcy proceeding, and so once again we may proceed without deciding which law applies.

3

in the absence of a writing. Instead, Shinhan urges us to look past its April 20 email to a later-circulated draft agreement entitled "Release Agreement," in which various terms were addressed. We decline to do so. In those cases in which we looked to the terms of a draft written settlement agreement for the purposes of evaluating the *Winston* factors, the draft was circulated *before* the parties purportedly reached an agreement to settle. *See Winston*, 777 F.2d at 79–80 (attempting to bind party to "fourth draft" of settlement agreement); *Ciaramella*, 131 F.3d at 321–22 (attempting to bind plaintiff to version of written settlement agreement to which plaintiff's counsel had responded, "We have a deal."). Here, by contrast, the parties agreed to settle on April 20, if at all, *before* any draft written settlement agreement was circulated.

We therefore conclude in light of the text of Shinhan's April 20 email, which did not reserve any contrary right, that the first factor weighs in favor of finding an intention to be bound.

### Factor 2: Partial performance

Shinhan endorses the District Court's finding that the second *Winston* factor, partial performance, weighs against finding an intent to be bound. Lehman halfheartedly suggests—in a footnote only—that this factor supports finding an agreement by virtue of the fact that it "undertook every single action requested by Shinhan until the moment Shinhan reneged on the binding and enforceable [s]ettlement." Appellees' Br. at 27 n.8. We disagree with Lehman's assessment. We identify no partial performance by Lehman of the putative agreement reached on April 20: Lehman neither provided Shinhan a release nor sought to dismiss voluntarily its claims before the Bankruptcy Court, its two primary obligations under a settlement. We find its mere cooperation with Shinhan on documentation is of little or no significance for purposes of our *Winston* analysis. The second *Winston* factor thus weighs against finding an intention to be bound as of April 20.

### Factor 3: Agreement to all terms of the alleged contract

The third prong of the *Winston* framework asks "whether there was literally nothing left to negotiate or settle, so that all that remained to be done was to sign what had already

4

been fully agreed to." *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 76 (2d Cir. 1984). We have cautioned that "[i]t is not for the court to determine retrospectively that at some point in the evolution of a formal document [ ] the changes being discussed became so 'minor' or 'technical' that the contract was binding despite the parties' unwillingness to have it executed and delivered." *Winston*, 777 F.2d at 83. But "minor" or "technical" changes are relevant "only if they show that there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing satisfactory to both sides in every respect." *Powell*, 497 F.3d at 130 (internal quotation marks omitted).

Shinhan identifies a handful of contractual terms that, it contends, were material and remained open on April 20, allegedly evidencing that the parties had not agreed to the terms of the settlement on that date. In the ordinary case, we might find persuasive Shinhan's argument that the April 20 agreement as to only the payment amount did not leave "literally nothing . . . to negotiate or settle," *R.G. Grp.*, 751 F.2d at 76. The circumstances of the Lehman bankruptcy, however, convince us that, on April 20, the parties *had* agreed to the material terms of a settlement agreement.

When Shinhan emailed Judge Mabey that day to communicate its assent to the settlement amount he proposed, it did not identify any outstanding issues. When Judge Mabey emailed the parties later that day to inform them that they had reached an agreement regarding the settlement amount, Shinhan expressed no confusion or reservation as to the "routine settlement documentation" referenced by Judge Mabey. J.A. at 130. Especially in light of Shinhan's counsel's experience settling cases in the Lehman bankruptcy (reflected in the record, *see* J.A. at 244), Shinhan's failure at that time to identify any material issue on which its position might differ from that expressed in Lehman's "routine settlement documentation" provides strong evidence that the parties had agreed to all of the material terms of the agreement on April 20. Indeed, Shinhan's counsel assured LBHI's counsel that the settlement agreement would be signed, and it was only after LBHI's adversary proceeding against Shinhan was dismissed that Shinhan reneged on its agreement. In this context, we comfortably conclude that after April 20, "all that remained to be done was to

5

sign what had already been fully agreed to," *R.G. Grp.*, 751 F.2d at 76.[2] The third *Winston* factor therefore weighs in favor of finding an intent to be bound.

**Factor 4: Regularity with which this type of agreement is committed to writing**

With regard to the last prong of the *Winston* framework—the regularity with which this type of agreement is committed to writing—we have previously stated that "[s]ettlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." *Ciaramella*, 131 F.3d at 326. "[T]he complexity of the underlying agreement," however, "is an indication of whether the parties reasonably could have expected to bind themselves orally." *Id.* Although the Bankruptcy Court fairly characterized the putative settlement here as "super simple," J.A. at 31, Lehman has not identified any precedential opinion in which we relied on the *Winston* factors to recognize and enforce a putative settlement without either a written draft agreement or assent to the terms in open court before an attempt to renege. During oral argument in this Court, moreover, Lehman acknowledged that it did not effectuate a single settlement during the entire Lehman bankruptcy without a written agreement. Given this consistent practice, and despite the apparent simplicity of the putative settlement, we see the fourth *Winston* factor as weighing in Shinhan's favor and against finding an intention to be bound to any settlement agreement.

**Weighing the *Winston* factors**

This is a close case: the first and third *Winston* factors weigh in favor of finding the parties intended to be bound on April 20, as Lehman would have us do, while the second and fourth factors weigh against such a finding, in line with Shinhan's position. Ultimately, however, we conclude that as of April 20, the parties intended to be bound and the settlement agreement is enforceable. The action contemplated under the settlement agreement here (however defined) was simple and would have been rapidly achieved, rendering the second *Winston* factor—the absence of partial performance—only minimally

---

[2] This conclusion is further buttressed by: (a) Lehman's rapid acquiescence to Shinhan's requests after April 20; and (b) Shinhan's failure to suggest, to Lehman or to Judge Mabey, between April 20 and June 30, 2016, that it considered any material term unresolved.

probative of any intent on April 20 not to be bound. By contrast, as discussed above, the absence of an express reservation of rights and of outstanding material terms to be negotiated weighs heavily in favor of finding an intention to be bound, especially in view of the parties' conduct (the lack of any meaningful disagreement beyond the settlement amount) and the broader context of the Lehman bankruptcy (with which both parties were apparently familiar). In these circumstances, we conclude that the balance tips in favor of finding an intention to be bound. We therefore affirm the District Court's order holding Shinhan to the settlement.

* * *

We have considered Shinhan's remaining arguments and conclude that they are without merit. Accordingly, we **AFFIRM** the order of the District Court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court