Wells v. New York City Department of Correction

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of April, two thousand twenty.

PRESENT:
>ROBERT A. KATZMANN,
>>*Chief Judge,*
>MICHAEL H. PARK,
>>*Circuit Judge,*
>GEOFFREY W. CRAWFORD*,*
>>*Chief District Judge.\**

_____

Carl Douglas Wells,

>*Plaintiff-Appellant*,

>v.                                                                              19-1354

New York City Department of Correction,
Commissioner Joseph Ponte, Superintendent Glenn,
RNDC, Superintendent Mingo, AMKC, City of
New York,

>*Defendants-Appellees*.

_____


FOR PLAINTIFF-APPELLANT:                    Carl Wells, pro se, Stormville, NY.

_____

\* Chief Judge Geoffrey W. Crawford, of the United States District Court for the District of Vermont, sitting by designation.

FOR DEFENDANTS-APPELLEES:                    Nwamaka Ejebe, Jane L. Gordon, of
                                                                   Counsel, *for* Georgia M. Pestana, Acting
                                                                   Corporation Counsel of the City of New
                                                                   York, New York, NY.

Appeal from an order and judgment of the United States District Court for the Eastern

District of New York (Matsumoto, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND**

**DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Carl Wells, pro se, sued the New York City Department of Correction and others

under 42 U.S.C. § 1983, alleging that corrections officers at Rikers Island were negligent and

violated his constitutional rights when they exposed him to a chemical agent, which the defendants

identify as oleoresin capsicum spray, while incarcerated and failed to provide medical treatment.

Thereafter, the defendants informed the district court that the parties had settled, and Wells signed

a written settlement agreement and stipulation of dismissal.   After the jointly signed stipulation of

dismissal was filed on the district court docket, Wells filed a letter with the court indicating that the

stipulation was void.   The defendants moved to enforce the settlement and the district court granted

their motion, reasoning that Wells had entered into a valid settlement agreement and that he did not

show that the agreement was invalidated by coercion, duress, bad faith, or incompetency.   We

assume the parties' familiarity with the underlying facts, the procedural history of the case, and the

issues on appeal.

"We review a district court's factual conclusions related to a settlement agreement, such as

whether an agreement exists or whether a party assented to the agreement, under the clearly

erroneous standard of review."   *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir.

2

2005) (citing *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997)).  "We review *de novo* a district court's legal conclusions with respect to its interpretation of the terms of a settlement agreement . . . and its interpretation of state law[.]"  *Id.* (internal citation omitted).

The district court did not err by concluding that Wells entered into a valid settlement agreement with the defendants.  "A settlement agreement is a contract that is interpreted according to general principles of contract law."  *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007).  In New York, "one who signs a document is, absent fraud or other wrongful act of the other contracting party, bound by its contents."  *Da Silva v. Musso*, 53 N.Y.2d 543, 550 (1981).

The record shows that Wells signed multiple settlement documents and sent them to the defendants.  Wells argues that there was no agreement to settle because he told defense counsel that the defendants' offer failed to include attorney's fees, among other things.  This argument is undermined by the fact that Wells agreed to the terms of the settlement by signing the settlement documents.  The settlement agreement stated that the defendants would compensate Wells with $850 in full satisfaction of all claims, "including claims for costs, expenses, and attorneys' fees."  The accompanying offer letter also stated that the $850 included all costs, expenses, and attorney's fees.  By signing and sending the settlement documents, Wells communicated his agreement to the terms contained in them and cannot now escape the agreement because he is dissatisfied with the terms.  *See Powell*, 497 F.3d at 128 ("Once entered into, the contract is binding and conclusive" and "a court cannot relieve [the plaintiff] of that [] choice [to settle] simply because his assessment of the consequences was incorrect.").

The district court also correctly concluded that the settlement agreement was not invalidated

by coercion, duress, lack of mental capacity, or the defendants' bad faith. As an initial matter, the defendants argue that Wells abandoned any argument concerning coercion or duress because he did not argue these issues in his appellate brief. Wells's brief does not specifically argue that he was coerced into settling by the defendants or otherwise acted under duress. Rather, it makes references to the fact that the defendants allegedly spied on him during the litigation and deliberately interrupted depositions and other conferences. Even if Wells's references can be construed as an argument that he acted under duress, it is meritless. "[A] settlement contract or agreement, like any other, may be attacked on the grounds that it was procured by fraud, duress or other unlawful means." *First Nat'l Bank of Cincinnati v. Pepper*, 454 F.2d 626, 632 (2d Cir. 1972). In New York, "'[a] contract is voidable on the ground of duress when it is established that the party making the claim was forced to agree to it by means of a wrongful threat precluding the exercise of his free will.'" *Id.* (quoting *Austin Instrument, Inc. v. Loral Corp.*, 29 N.Y.2d 124, 130 (1971)). Wells offers no argument that the alleged spying or interruptions, which began to occur before the parties reached any sort of settlement, prohibited him from exercising his free will to decline the settlement.

Wells also argues that he lacked the mental capacity to enter into the settlement agreement. But the fact that he suffered from some degree of mental incapacity does not, by itself, render the contract void. *See Blatt v. Manhattan Med. Grp., P.C.*, 131 A.D.2d 48, 51 (1st Dep't 1987) ("mere depression, serious or otherwise" is insufficient to invalidate an otherwise valid contract). Instead, Wells needs to show that "his mind was so affected as to render him wholly and absolutely incompetent to comprehend and understand the nature of the transaction and make a rational

4

judgment concerning that transaction." *Id.* (internal quotation marks and citation omitted). Alternatively, he could show that his agreement to settle was "the result of impulsive or irrational behavior beyond his control and that defendants knew, or should have known, that he did not possess the proper capacity to enter into contracts." *Id.* at 52. Regardless of which standard is used, Wells has not established that he lacked the capacity to settle.

Wells primarily points to a psychiatric evaluation as evidence of his lack of capacity to settle. But the evaluation—which was based on a March 2017 interview of Wells and designed to give an opinion on Mr. Wells's state of mind in 2006—did not show that Wells was lacked the capacity to settle when he signed the settlement documents in November 2017. It simply showed that Wells would benefit from psychiatric treatment. Furthermore, as the district court noted, Wells's behavior during the settlement negotiations showed that he could settle. He made clear demands and engaged in several rounds of negotiation with the defendants. Nor does Wells's decision to settle appear to be the result of an irrationally impulsive behavior. Therefore, the district court did not err by concluding that Wells was competent to settle. *See id.* at 53 ("The fact that [the plaintiff] was in a severely depressed emotional state is scarcely sufficient indication that he did not have either the necessary understanding to execute a contract or that he was unable to control his behavior.").

Wells also appears to argue that the defendants acted in bad faith by belatedly mailing an affidavit from a corrections officer and portions of a logbook, and by having his cell searched and some legal files taken. Even liberally construing Wells's allegation as an argument that the defendants fraudulently misrepresented their position, it is meritless. *See Crigger v. Fahnestock*

5

*& Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006) (to prove fraud under New York law, a plaintiff must show, inter alia, that he was damaged by the defendant's misrepresentation).

We have reviewed the remainder of Wells's arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court